OPINION OF THE COURT
 

 Fuchsberg, J.
 

 On this appeal we are called upon to resolve one of the questions produced by the tensions that have accompanied the decentralization of the 900-school public education system in New York City. Specifically, was a community school district’s board of education empowered to refuse issuance of a permanent certificate of appointment to a principal recommended for tenure by the district’s superintendent of schools? The answer is that, under the applicable statutes and the circumstances of this case, it was not.
 

 Petitioner Elease Jackson has served continuously as the
 
 *491
 
 principal of P.S. 113 in Manhattan since 1972.
 
 [1]
 
 The allegations that her professional performance has consistently rated above average and that she has successfully implemented a long list of innovative programs at her school are undenied. With the enactment of the supervisory tenure law (Education Law, § 2573, subd 1, par [b]), Ms. Jackson and other similarly situated supervisory school personnel could qualify for permanent appointment. She thereupon served her requisite three-year probationary term and, when this period expired, the community superintendent of schools, to whom she would be answerable directly in carrying out her duties on a day-to-day basis, issued a written report recommending to the board that she be granted tenure. However, the nine-member board, after pursuing its own investigative process, held a public meeting at which it voted to the contrary, as it now puts it "solely on her qualifications and the needs of her school”.
 
 [2]
 
 The courts below have sustained the community board’s authority to overrule the superintendent. For the reasons which follow, we believe there should be a reversal.
 

 In the main, subdivision 6 of section 2573 of the Education Law, which, having been enacted back in 1935, long predates the statute by which eligibility for tenure was extended to principals, controls this case. Its clear-cut provisions are best described
 
 in haec verba.
 
 Straightforwardly, it says that in cities "having a population of four hundred thousand or more” (i.e., New York City and Buffalo), "at the expiration of the probationary term of any persons appointed for such term, the superintendent of schools shall make a written report to the board of education recommending for permanent appointment those persons who have been found satisfactory and such board of education shall immediately thereafter issue to such persons permanent certificates of appointment”. Moreover, section 2573, though at the time it originally was adopted could only have contemplated a city-wide school board and a city-wide superintendent, was made expressly applicable to the present parties by the 1969 decentralization law (L 1969, ch 330). For, as part of the changeover from what had
 
 *492
 
 been a highly centralized system, it transferred, in terms as broad-sweeping as they are unequivocal, to each newly designated community superintendent "the same powers and duties with respect to the schools and programs under the jurisdiction of his community board as the superintendent of schools of the city district of the city of New York had on the effective date of this [law]” (Education Law, § 2590-f, subd 1, par a).
 
 [3]
 

 Returning to section 2573, it is not surprising, in view of the plain and unmistakable language of that statute, that the community school board in its brief to us does not quarrel with the clarity of its words. Rather, it in effect argues that, since the power of the superintendent is only to "recommend” tenure, the statute’s unqualified mandate that the board "shall immediately thereafter issue” the recommended certificate cannot mean what it says. It thus claims that, in juxtaposition, the two clauses present an inherent ambiguity calling for judicial resolution.
 

 But there is neither ambiguity nor inconsistency. Since the statute can boast the virtue of having confined itself to language of ordinary meaning, there is certainly no need to resort to lexicographical authorities. And there is no per se rule against placing — whether by appropriate administrative delegation or, as here, by legislative fiat — power to make a substantive determination in one official or official body and that of formally pronouncing the result in another (cf.
 
 Corkum v Bartlett,
 
 46 NY2d 424, 430). The clauses are thus readily reconciled (cf.
 
 Matter of Terry,
 
 218 NY 218, 222).
 

 Moreover, the essentially ministerial nature of the board’s function in the grant of tenure under the statute may not be bootstrapped into a right of review simply because the board undertakes on its own to investigate the recommendees and to vote on their suitability. The confines of its power to act are carefully circumscribed, and mandatory at that. The direction that, when the community superintendent makes favorable tenure recommendations, the board "shall
 
 immediately
 
 thereafter issue * * * permanent certificates of appointment”, whether to the ordinary ear or to a more trained perception, inescapably denotes a duty to comply (see, e.g., 1 A Suther
 
 *493
 
 land, Statutory Construction [4th ed, 1972], pp 497, 499; McKinney’s Cons Laws of NY, Book 1, Statutes, § 177).
 

 Of course, when a statute, though clear as clear can be on its face, makes no sense, we are not bound to mechanical subservience to its ill-chosen legislative language. But that cannot be said to be the situation here. Like it or not, be it a statute whose wisdom we might applaud or decry, we cannot say it does not represent a permissible and rational employment of legislative power (see
 
 Town of Huntington v Park Shore Country Day Camp of Dix Hills,
 
 47 NY2d 61, 68).
 

 Plans for decentralization and development of a community public school system for New York City were long and hotly debated, in and out of the legislative halls, before they came to fruition. Subject to the State Commissioner of Education’s ultimate responsibility for the execution of educational policies (Education Law, § 305, subd 1), the city’s public schools until then were managed by an all-powerful central board and superintendent; local boards, such as they were, were under their dominion.
 
 [4]
 
 The devolution of all this authority and its allocation obviously were vital matters. All the more was this so since the demand for community controlled schools was regarded by some as a precursor for even more comprehensive community control, whose wider goals obviously could overshadow educational ones (see Kirp, Community Control, Public Policy and the Limits of Law, 68 Mich L Rev 1355, 1360). Needless to say, this could — and did — make for compromises among competing contentions, not the least of which bore on the degree to which educational control was to be vested in the community at large as represented by the board. In this context, it is not for the courts, but was for the Legislature, to say whether the decisive responsibility for passing on the permanent retention of an educator was to reside in the professional judgment of a superintendent trained to this task or in an elected board which, as some students of the problem have highlighted, perhaps because it would tend to be more directly accountable to the community, might weight its determination on considerations of policy in addition to those of pedagogic merit (see Urban School Decentralization: The Problem of the One and the Many, 5 Col J L & Soc Probs, No. 1, 137, 156).
 

 
 *494
 
 Furthermore, a pattern for amending subdivision 6 of section 2573, had the Legislature desired to do so, was readily available. For the tenure-related provisions of the Education Law applicable to cities with fewer than 125,000 inhabitants expressly contemplate school board review, requiring a "majority vote” of the board and relying on permissive language (see Education Law, § 2509, subd 2; see, also, § 3013, subd 2 [repealed L 1978, ch 358, § 3]; cf. § 2509, subd 1; § 2573, subd 1, par [a]; § 3012, subd 1; § 3013, subd 1 [repealed L 1978, ch 358, § 3]; § 3014, subd 1 [requiring majority vote of the board for dismissal of probationary teachers]).
 
 [5]
 
 Other tenure statutes without exception eschew the mandatory language of subdivision 6 of section 2573 of the Education Law (see Education Law, § 3012, subd 2; § 3014, subd 2; see, also, § 3031).
 

 Finally, while, as respondents point out, the Commissioner of Education has had occasion to interpret subdivision 6 of section 2573 to bestow discretion on a city school board to deny tenure to a teacher who has won the superintendent’s recommendation
 
 (Matter of Solominski,
 
 5 Ed Dept Rep 120), an administrative pronouncement is not to be slavishly followed when it "runs counter to the clear wording of a statutory provision”
 
 (Kurcsics v Merchants Mut. Ins. Co.,
 
 49 NY2d 451, 459). Notably, the commissioner’s opinion cited neither judicial nor administrative nor legislative authority for its deduction.
 

 Accordingly, the order should be reversed and the petition granted.
 

 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
 

 Order reversed, with costs, and the petition granted.
 

 [1]
 

 . Ms. Jackson’s termination by reason of her denial of tenure has been stayed pending, first, her appeal to the Appellate Division and, thereafter, the one now before this court.
 

 [2]
 

 . The principal has raised questions of a discriminatory motive on the part of the board, an allegation with which, in view of our disposition of the case, we have no occasion to treat.
 

 [3]
 

 . In this connection, we note that section 2590-f does not condition its applicability on whether the superintendent’s power was also derived from the city board of education, as respondent here, irrelevantly we think, maintains, or whether it was only from the express language of subdivision 6 of section 2573.
 

 [4]
 

 . (See, generally,
 
 Matter of Ocean Hill-Brownsville Governing Bd. v Board of Educ.,
 
 23 NY2d 483, esp 488.)
 

 [5]
 

 .
 
 Matter of Cohoes City School Dist. v Cohoes Teachers Assn.
 
 (40 NY2d 774) involved a school district that was within the embrace of section 2509 of the Education Law.