■ ROBERT ABRAMS, as Attorney-General of the State of New York, Appellant, v MEADE H. ESPOSITO, Respondent.—Order, Supreme Court, New York County, entered October 5, 1979, dismissing the amended complaint pursuant to CPLR 3211 (subd [a], par 1), a defense based on documentary evidence, in this action arising under the Pari-Mutuel Revenue Law (L 1940, ch 254, as amd) as to political party officers having any dealings with horse race tracks, and a subsequent judgment entered on said order on October 9, 1979, unanimously reversed, on the facts and the law, and the motion to dismiss the amended complaint denied, without costs or disbursements. Section 107 of the Pari-Mutuel Revenue Law (L 1940, ch 254, added L 1954, ch 514, § 1, renum L 1970, ch 1023, § 1, amd § 2, as amd) forbids an interest in a pari-mutuel licensee to a political party officer who is defined, in part, as a "county leader, chairman, vice-chairman, counsel, secretary or treasurer of a county committee" (Pari-Mutuel Revenue Law, § 107, subd 3, par [c], cl [3]). As authorized by the section, the Attorney-General has commenced this action to remove the defendant from party office, alleging that

he has an interest in a pari-mutuel licensee that is forbidden to him because he is the county leader of the Kings County Democratic Party. Special Term dismissed the amended complaint. It found that the document offered in defense, the rules of the Democratic Party of Kings County, makes no provision for a county leader, and that the defendant is Chairman of the Executive Committee of the Kings County Democratic Committee. It held that, under the strict construction necessary because the statute is one of forfeiture, the defendant holds no position within the statute's definition of a party officer. Section 107 of the Pari-Mutuel Revenue Law was intended to eliminate "the opportunity of political influence for private gain" (Message of the Governor, NY Legis Doc, 1954, No. 79) and to "effect a complete divorcement between all public officials and all proprietors of race tracks" *(Maguire v Monaghan,* 206 Misc 550, 556; see, also, *Matter of Murtha v Monaghan,* 1 AD2d 178, 188). Under the construction urged by the defendant, party officers could readily defeat the intention of the Legislature by the simple device of giving to their positions titles different from those set forth in the statutory definition. The rules of strict construction do not command such inflexibility; they do not constrain a court to defeat the evident intention of the lawmaker *(People ex rel. Groves & Sons Co. v Hamilton,* 227 App Div 356, 358, affd 254 NY 540). Rather, statutes of forfeiture must "receive a reasonable construction, and the courts will search for and follow the true intent of the legislature" (44 NY Jur, Penalties and Forfeitures, § 8). Whether a party officer is subject to the prohibition of section 107 of the Pari-Mutuel Revenue Law depends on the functions he performs, the duties of the position, and not the title given to it. This method of statutory construction by functional analysis has been endorsed by the courts in actions involving the removal of civil servants from office and, by analogy, it is appropriate here. (See *Matter of Driscoll v Troy Housing Auth.,* 6 NY2d 513; *Matter of Mercer v Dowd,* 288 NY 381; *Matter of Rohr v Kenngott,* 288 NY 97). Under this construction, the document offered in defense is not dispositive of the issue whether the defendant is the county leader. The defendant asserts that the plaintiff is precluded from bringing this appeal by his failure to have appealed the order that dismissed the original complaint and which applied a strict construction of the statute. We do not agree. The prior order did not involve the documentary defense. It held that the original complaint did not state a cause of action because it failed to allege that the defendant's conduct was knowing and willful and it gave leave to replead. Concur—Sullivan, J. P., Silverman, Lynch and Carro, JJ.