KAREN S. BESSER, Appellant, v E. R. SQUIBB & SONS, INC., et al., Respondents.

First Department, March 30, 1989

## APPEARANCES OF COUNSEL

*William D. Fireman* of counsel *(Alfred S. Julien* with him on the brief; *Julien & Schlesinger, P. C.,* attorneys), for appellant.

*Robert M. Dato* of counsel *(Barry M. Epstein, Marc S. Klein, Lindsay H. Lew, David J. Fleming, Nancy Lucas Haniotis, Russel H. Beatie, Jr.,* and *Sanford N. Berland* with him on the brief; *Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P. A.,* and *Dickson, Carlson & Campillo,* attorneys), for E. R. Squibb & Sons, Inc., and *Russel H. Beatie, Jr.,* for Eli Lilly & Company, respondents. (One brief filed.)

*William A. Rome* of counsel *(Jay P. Mayesh* and *Robin J. Stout* with him on the brief; *Stroock & Stroock & Lavan,* attorneys), for The Upjohn Company, respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This appeal from the dismissal of a complaint on the ground

that the action, commenced pursuant to the "revival statute", was barred by the "borrowing statute" involves the interplay between the latter (CPLR 202)[1] and the 1986 statute which revived causes of action arising out of exposure to diethylstilbestrol (DES) and other toxic substances, even if such causes had been previously dismissed as time barred.[2] Since her action is time barred if the borrowing statute controls, plaintiff argues that, inasmuch as the revival statute begins with the words "[n]otwithstanding any other provision of law" (L 1986, ch 682, § 4) the borrowing statute is to be disregarded in revival statute actions. The motion court rejected this argument and granted defendants' motion for summary judgment.

■ Plaintiff's construction of the revival statute does not comport with the Legislature's intent to provide to New York residents only—not the entire world—a one-year window period in which to sue for claims otherwise barred by law. Plaintiff was a resident of Pennsylvania at the time her cause of action accrued, a resident of New Jersey at the time her injury manifested itself, and a resident of Virginia at the time she first commenced a lawsuit for *in utero* exposure to DES. Despite the absence of any nexus to New York, she contends that this action, and many others which similarly have no connection to the State, can be maintained in this jurisdiction. We believe that such a result is contrary to logic and foreclosed by the legislative history and policy underlying the revival statute. Accordingly, we affirm.

Plaintiff, who was born in Philadelphia, was allegedly exposed, *in utero,* to DES during her gestation. Thus, any such exposure occurred wholly in Pennsylvania. In September 1975, while she was a resident of New Jersey and attending college in Massachusetts, plaintiff became ill and was diagnosed as having clear cell adenocarcinoma of the cervix, a condition allegedly caused by the exposure to DES. She thereafter underwent treatment in New Jersey and Pennsylvania. After graduating from college in 1977, plaintiff returned to her

1. CPLR 202 provides: "An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

2. In *Hymowitz v Lilly & Co.* (139 AD2d 437, *affg* 136 Misc 2d 482), this court upheld the revival statute in the face of a constitutional challenge. Leave to appeal to the Court of Appeals was granted (140 AD2d 1013) and the appeal heard on February 15, 1989 (73 NY2d 487).

home in New Jersey. Since that time, she has resided in Illinois, Virginia and Massachusetts, but now apparently resides in New York.

On December 29, 1980, plaintiff commenced an earlier action in New York solely against E. R. Squibb & Sons, Inc. to recover for her alleged exposure to DES. At the time, she was a resident of Virginia, and had never lived in New York. That action was dismissed on July 27, 1982 because the court found that under the then applicable three-year Statute of Limitations, plaintiff's cause of action accrued at the time of her "last exposure" to DES, and that, even allowing for a toll of the limitation period until she reached majority, she had commenced her action more than three years after she attained her majority on September 1, 1974.

In 1986, as part of a tort reform package, the Legislature enacted the Toxic Tort Revival Statute (L 1986, ch 682, § 4), which provides: "Notwithstanding any other provision of law, including sections fifty-e and fifty-i of the general municipal law, section thirty-eight hundred thirteen of the education law and the provisions of any general, special or local law or charter requiring as a condition precedent to commencement of an action or special proceeding that a notice of claim be filed or presented, every action for personal injury, injury to property or death caused by the latent effects of exposure to diethylstilbestrol, tungsten-carbide, asbestos, chlordane or polyvinyl-chloride upon or within the body or upon or within property which is barred as of the effective date of this act or which was dismissed prior to the effective date of this act solely because the applicable period of limitations has or had expired is hereby revived and an action thereon may be commenced provided such action is commenced within one year from the effective date of this act".

Although the 1986 legislation made significant changes in the rules governing the conduct of personal injury suits, its focus was on the elimination of New York's "last exposure" rule and the adoption of a "discovery" Statute of Limitations. (L 1986, ch 682, § 2, adding CPLR 214-c.) The new Statute of Limitations provides that a personal injury claim arising out of the "latent effects of exposure to any substance or combination of substances" accrues on the earlier of "the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence the injury should have been discovered". (CPLR 214-c [2].) Henceforth, an injured party is permitted to assert a cause of action within

three years from the date of discovery of the injury, regardless of the time of exposure. In addition, in an effort to eliminate the unfairness of the State's last exposure rule, the revival statute provided a one-year window period to sue for persons who were or would have been barred by operation of the preexisting last exposure rule.

Commenced on August 6, 1986, this action was also brought initially only against Squibb. In addition to a general denial, Squibb's answer asserted as affirmative defenses the bar of the applicable Statute of Limitations and the unconstitutionality of the revival statute. When plaintiff moved to dismiss these affirmative defenses, Squibb cross-moved for summary judgment on the ground, *inter alia,* that the action was barred by the Statute of Limitations. While the motion was pending, plaintiff commenced similar actions against The Upjohn Company and Eli Lilly & Company.

■ Squibb argued, and plaintiff did not contest, that where a cause of action accrues outside New York in favor of a nonresident, the borrowing statute requires that the foreign Statute of Limitations apply if it is shorter than the applicable New York limitation period *(see, e.g., McCarthy v Bristol Labs.,* 86 AD2d 279, 283, *appeal dismissed* 58 NY2d 780); that plaintiff's injuries accrued in 1955 in Pennsylvania; [3] and that, as a result, she must satisfy the Pennsylvania limitation rule, which, as long as the revival statute is upheld as constitutional, is shorter than the New York period. In response, plaintiff's sole contention was, as it is on appeal, that since the revival statute commences with the words "[n]otwithstanding any other provision of law", the borrowing statute was intended to be excluded from any application to revived claims.

Finding that exposure to the drug occurred in Pennsylvania, while discovery of the illness took place in New Jersey, the court held that either the Pennsylvania or New Jersey law would apply by virtue of the borrowing statute. Applying that statute, the court ruled that the claim was untimely under the Statute of Limitations of either State, and dismissed the

---

3. ■ For the purposes of the borrowing statute, a cause of action sounding in negligence or strict products liability accrues where the injury occurs. *(Martin v Dierck Equip. Co.,* 43 NY2d 583; *Myers v Dunlop Tire & Rubber Corp.,* 40 AD2d 599.)* In cases involving exposure to a chemical substance, the Court of Appeals has consistently held that "injury", if any, occurs at the time, and thus the place, of exposure. *(See, e.g., Schmidt v Merchants Desp. Transp. Co.,* 270 NY 287; *Schwartz v Heyden Newport Chem. Corp.,* 12 NY2d 212.)

complaint. The court rejected the argument that the initial words to the revival statute excluded the application of the borrowing statute, citing *In re "Agent Orange" Prod. Liab. Litig.* (597 F Supp 740, *affd* 818 F2d 145). At the court's direction, the parties stipulated that the separate actions be consolidated and that Squibb's cross motion be deemed to have been made by Upjohn and Lilly as well. This appeal followed.

Plaintiff contends that "the borrowing statute is simply * * * to be disregarded" because the revival statute bestows its benefits "[n]otwithstanding any other provision of law". Plaintiff further argues that because the revival statute's plain language conveys a definite meaning there is "no occasion for resorting to rules of statutory construction". Strict construction, however, should not be used to reach unintended results. "The rules of strict construction do not command such inflexibility; they do not constrain a court to defeat the evident intention of the lawmaker". *(Abrams v Esposito,* 75 AD2d 528, 529, *affd* 54 NY2d 886.)

In determining a statute's meaning, the court's function is not to adhere slavishly to the statute's literal language, but, rather, to ascertain the Legislature's intent. As the court stated in *Matter of River Brand Rice Mills v Latrobe Brewing Co.* (305 NY 36): "The intent of the Legislature in enacting legislation is the primary object to be found. Whenever such intention is apparent it must be followed in construing the statute. * * * '[A] thing which is within the letter of the statute is not within the statute unless it be within the intention of the lawmakers, but a case within the intention of a statute is within the statute, though an exact literal construction would exclude it. It is a familiar legal maxim that "he who considers merely the letter of an instrument goes but skin deep into its meaning," and all statutes are to be construed according to their meaning, not according to the letter.' " *(Supra,* at 43-44, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 111; *accord, Eaton v New York City Conciliation & Appeals Bd.,* 56 NY2d 340, 345 ["It is a fundamental principle of statutory interpretation that a court should attempt to effectuate the intent of the Legislature"]; *Rankin v Shanker,* 23 NY2d 111, 114 ["(A) primary command to the judiciary in the interpretation of statutes is to ascertain and effectuate the purpose of the Legislature"].)

This principle is so well established that even where, as here, the statute "may appear literally 'unambiguous' on [its] face, the absence of ambiguity facially is never conclusive."

*(New York State Bankers Assn. v Albright,* 38 NY2d 430, 434.) Indeed, "[s]ound principles of statutory interpretation generally require examination of a statute's legislative history and context to determine its meaning and scope." *(Supra,* at 434.) Thus, "[i]nquiry into the meaning of statutes is never foreclosed at the threshold". *(Supra,* at 436; *see also, Matter of Cullen [Roberts],* 93 AD2d 907.)

As noted previously, the 1986 tort reform legislation was principally intended to remedy the unfair consequences suffered by injured persons under the last exposure rule. The legislation furthered that purpose by providing a one-year window period for those New Yorkers whose claims were previously barred by the operation of that rule. As the memorandum prepared by its Senate sponsor noted, "This bill will provide relief to injured New Yorkers whose claims would otherwise be dismissed for untimeliness simply because they were unaware of the latent injuries until after the limitation period had expired." (1986 NY Legis Ann, at 287.) In contrast, the borrowing statute was primarily intended to prevent forum shopping by nonresident plaintiffs, as well as to afford resident defendants the benefit of the shortest limitation period. *(Antone v General Motors Corp.,* 64 NY2d 20, 27-28; *National Sur. Co. v Ruffin,* 242 NY 413, 417; *Stafford v International Harvester Co.,* 668 F2d 142, 151.) These policy concerns are achieved through a choice of law mechanism. Where a cause of action accrues outside New York in favor of a nonresident, the foreign Statute of Limitations is "borrowed".

Thus, the revival statute is concerned solely with the harshness of a time-bar that focused on a victim's exposure to a toxic substance, witting or otherwise, as a cause of action's accrual date, not the policies served by the borrowing statute. In enacting the revival statute, therefore, the Legislature's remedial purpose was merely to remove the obstacle of the last exposure rule, not to repeal the salutary purposes underlying the borrowing statute. It is a long-standing rule of statutory construction that a law will not be interpreted so as to modify preexisting law by implication. "[I]n the absence of a manifestation of intent to change a long-established practice, ordinarily no design to do so will be attributed to legislative action". *(McGowan v Mayor of City of N. Y.,* 53 NY2d 86, 94.) Thus, in the absence of some manifestation of intention by the Legislature to limit the borrowing statute, the revival statute should not be interpreted to override its provisions.

Rather, the two statutes should be construed, if possible, to accommodate the policies underlying each. "It is a familiar and salutary canon of construction that courts, in construing apparently conflicting statutory provisions, must try to harmonize them". *(Matter of Burger King v State Tax Commn.,* 51 NY2d 614, 620-621, citing McKinney's Cons Laws of NY, Book 1, Statutes §§ 98, 141.) In this connection, it should also be noted that statutes which revive causes of action previously time barred must be narrowly construed. *(Hopkins v Lincoln Trust Co.,* 233 NY 213.) "Revival is an extreme exercise of legislative power. * * * Uncertainties are resolved against consequences so drastic." *(Supra,* at 215.)

█ As already noted, the primary impetus behind enactment of the revival statute was to relieve the harsh results of New York's exposure-based Statute of Limitations, which, due to the latent effects of exposure to some toxic substances, might have expired before the injured party even knew of his injuries. Such a result is, of course, avoided in those States where the Statute of Limitations begins to run from the date of discovery. Thus, the New York Legislature would not have an interest in reviving the claims of nonresident plaintiffs who were adequately protected under their own States' Statutes of Limitations. Only New York residents whose causes of action accrued here were in need of relief from the consequences of the exposure-based Statute of Limitations. It should be noted that both Pennsylvania, the State where plaintiff was exposed to DES, and New Jersey, where her injuries were manifested and diagnosed, have Statutes of Limitations which begin to run upon discovery of the injury. Thus, plaintiff, unlike those New Yorkers for whom the revival statute was intended, had a viable cause of action in, at least, either Pennsylvania or New Jersey at the time of the diagnosis of her injury, had she chosen to pursue it.

The policy underlying the revival statute can be harmonized with the policies of the borrowing statute. The borrowing statute was primarily enacted to prohibit nonresident plaintiffs from forum shopping and to afford New York defendants the benefit of the shortest possible Statute of Limitations. By construing the revival statute so that revived claims are subject to the borrowing statute, the policies of each statute are afforded due regard. New York residents formerly subject to the harsh exposure-based Statute of Limitations will have access to the New York courts, while nonresident plaintiffs will be barred from forum shopping; moreover, New York

defendants will be afforded the benefit of the shortest possible Statute of Limitations for claims accruing outside the State.

Thus, when read consistently with the statute's underlying purpose, the introductory phrase of the revival statute can only mean that the CPLR's three-year limitations period on personal injury actions shall not apply to claims brought within the revival period. Accordingly, the phrase "[n]otwithstanding any other provision of law" is intended to obviate the proscriptions of CPLR 214, which, if applied, would result in the dismissal of any causes of action brought more than three years after the discovery of the injury. This was the interpretation reached in *In re "Agent Orange" Prod. Liab. Litig.* (597 F Supp 740, *supra),* where the court interpreted a nearly identical statute which provided that the claims of Vietnam War veterans arising out of exposure to Agent Orange would be governed by a discovery rule "[n]otwithstanding any provision of law to the contrary".[4] Recognizing that many of those asserting claims would be residents of different States and, hence, that the borrowing statute would present an impediment, the court asserted: "While the introductory clause of the statute, CPLR 214-b, states: 'Notwithstanding any provision of law to the contrary,' the reference appears to have been intended to avoid application of CPLR 214, the three-year statute for personal injury cases, to New York veterans. It does not suggest that CPLR 202 is inapplicable." *(Supra,* at 803-804.) Similarly, Judge McLaughlin in his 1981 Supplementary Practice Commentaries to the CPLR noted that "a non-resident plaintiff would be permitted to rely upon the [Agent Orange revival statute], although such a plaintiff would also have to deal with the additional hurdle of CPLR 202, the borrowing statute." (McKinney's Cons Laws of NY, Book 7B, CPLR 214-b, 1989 Pocket Part, at 327.)

---

4. The statute involved, CPLR 214-b, provides: "Notwithstanding any provision of law to the contrary, an action to recover damages for personal injury caused by contact with or exposure to phenoxy herbicides while serving as a member of the armed forces of the United States in Indo-China from January first, nineteen hundred sixty-two through May seventh, nineteen hundred seventy-five, may be commenced within two years from the date of the discovery of such injury, or within two years from the date when through the exercise of reasonable diligence the cause of such injury should have been discovered, whichever is later." (Added by L 1981, ch 266, § 3, amended by L 1982, ch 153, § 1.)

In addition, a special "Preservation of Rights and Remedies" section expressly revived any action which was or would be barred prior to June 16, 1985 because the Statute of Limitations had run. (L 1981, ch 266, § 4, as amended by L 1982, ch 153, § 2; L 1983, ch 358, § 1; L 1985, ch 498, § 1.)

■ The Agent Orange and Practice Commentary interpretation clearly governs the identical issue presented here.[5] Indeed, were CPLR 202 not to apply to actions commenced pursuant to the revival statute, claims caused by the effects of any of the enumerated five substances for injuries which accrued in any other State and which are time barred under that State's law could be imported to New York. Nothing in the revival statute or its legislative history suggests that the statute was intended to create a national safe harbor for second chance litigation by otherwise time-barred claimants. Furthermore, this is precisely the kind of forum-shopping evil which the borrowing statute was designed to avoid. *(Antone v General Motors Corp., supra,* 64 NY2d, at 27-28.)

Moreover, the failure to apply the borrowing statute herein would divest defendants of those vested rights created by the laws of sister States where the action would otherwise be barred. The Legislature could hardly have contemplated, much less intended, such a result. The bill specifically sought to "provide relief to injured New Yorkers".

■ Finally, we note that the dissent premises its entire argument on plaintiff's claim that she is now a New York resident, a circumstance which is irrelevant, since plaintiff can avoid the operation of CPLR 202 only if she was a New York resident at the time her cause of action accrued. *(Cellura v Cellura,* 24 AD2d 59; CPLR 202.) Moreover, such statutory distinction in treatment has been constitutionally upheld. *(Klotz v Angle,* 220 NY 347; *Nolan v Transocean Air Lines,* 276 F2d 280, *set aside on other grounds* 365 US 293, *on remand* 290 F2d 904.)

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered July 10, 1987, which, *inter alia,* granted defendant Squibb's cross motion for summary judgment, also deemed to have been made by defendants Upjohn and Lilly, should be affirmed, without costs or disbursements.

---

5. ■ Plaintiff's claim that the revival statute's reference to the General Municipal Law or the Education Law, but not to CPLR 214, evinces an intent that "any other provision of law" was to be disregarded is also unavailing. The cited provisions involve conditions precedent to the commencement of an action and are in the nature of Statutes of Limitations. Accordingly, their inclusion is consistent with the Legislature's intention to eliminate all vestiges of the last exposure rule judicially grafted onto CPLR 214, and should not be read as a purposeful omission of the borrowing statute, a statute of a wholly different nature.

Asch, J. (dissenting). This is a products liability action in which plaintiff-appellant Karen Sue Besser seeks damages for personal injuries against three defendant pharmaceutical companies. The claim results from the ingestion by plaintiff's mother, during pregnancy, of defendants' drug, diethylstilbestrol (DES). The appeal presents to this court, for the first time, a novel issue pertaining to the recent Toxic Tort Revival Statute (L 1986, ch 682, § 4) passed by the Legislature of New York to afford a remedy to victims of five separate toxic substances, when claims, in many instances, were time barred even before some of those injured were even aware of their existence.

We are asked to decide whether the plaintiff, a New York resident at the time her action was commenced, is barred under the New York "borrowing statute" (CPLR 202) from taking advantage of the benefits conferred by the revival statute.

Plaintiff appeals from an order of the Supreme Court, New York County, which granted defendant Squibb's cross motion for summary judgment, in which the other defendants had joined. The basis of this order was that the "borrowing statute" (CPLR 202) invoked a Statute of Limitations which barred the action. The same order also denied plaintiff's motion to dismiss two of defendant Squibb's affirmative defenses.

Plaintiff's mother, while she was pregnant with plaintiff some *33* years ago, ingested DES, produced and marketed by defendants. She had no way of knowing that the consequences of such use might be catastrophic to her daughter, as yet unborn. Plaintiff was born in Pennsylvania, where she had been conceived and exposed to DES, in 1955. She became ill with cervical cancer in 1975, some 20 years later, in New Jersey, where she underwent surgery. A prior action she commenced on December 29, 1980, in New York, was dismissed as untimely. Thereafter, plaintiff brought the present action on August 6, 1986, as a resident of New York. While the record does not indicate when this residency began, the defendants cannot persuasively establish that plaintiff was only a resident of convenience for purposes of this action.

CPLR 202, New York's borrowing statute, is a protective device for New York defendants to be raised so as to bar suits brought by foreign plaintiffs. In effect, CPLR 202 provides that with respect to a cause of action accruing outside of the State,

commenced by a nonresident, a New York defendant will be able to invoke whichever Statute of Limitations has already expired, the foreign jurisdiction's or New York's. However, CPLR 202 preserves for the resident plaintiff the benefit, or the detriment, of New York's Statute of Limitations.

In this case, it is undisputed that the action would be time barred in both *New Jersey* and *Pennsylvania.* And, ordinarily, under CPLR 202, plaintiff's action would be time barred for all purposes if plaintiff was a nonresident. Fortunately for her, she is protected by her procedural status as a resident of New York.

In 1986, the Legislature passed the so-called revival statute (L 1986, ch 682, § 4). It revived for one year certain causes of action which had been time barred under New York law. It is not disputed that this action would be deemed timely commenced, then, if plaintiff could take advantage of the revival statute. Laws of 1986 (ch 682) reads in pertinent part: "§ 4. Notwithstanding any other provision of law * * * every action for personal injury, injury to property or death caused by the latent effects of exposure to diethylstilbestrol, tungsten-carbide, asbestos, chlordane or polyvinylchloride upon or within the body or upon or within property which is barred as of the effective date of this act or which was dismissed prior to the effective date of this act solely because the applicable period of limitations has or had expired is hereby revived and an action thereon may be commenced provided such action is commenced within one year from the effective date of this act".

Both the defendants and the plaintiff engage in substantial argument whether the revival statute addresses only New York claims barred by the New York Statute of Limitations, or whether it can revive an action time barred not by New York's Statute of Limitations, but by that of foreign jurisdictions, pursuant to CPLR 202.

As noted, the revival statute commences with the qualifying language that it will apply "[n]otwithstanding any other provision of law", and it then enumerates certain such other limiting provisions of law. Plaintiff contends that this statutory language is to be taken at face value and serves to nullify the application of CPLR 202 and any other Statute of Limitations. Defendants urge that such a literal interpretation misreads the legislative intent of the statute, which was to be narrowly construed; it was never intended to apply to nonresident causes of action, into which category they include the instant case.

The case law on this specific point is virtually a blank slate and, so, general principles of statutory construction will control.

Judge Breitel has stated with respect to statutory interpretation that "purpose cannot be a warrant to go beyond the language used. The language is a limitation on construction even as the purpose may be a liberalizing factor" *(see, Matter of Smith [Great Am. Ins. Co.],* 29 NY2d 116, 120). McKinney's Consolidated Laws of NY, Book 1, Statutes § 111 states, in pertinent part, that "the intent of the Legislature is the primary object * * *. While such intention is first to be sought from a literal reading of the act itself * * * giving such language its natural and obvious meaning * * * the literal meanings of words are not to be adhered to * * * to defeat the general purpose and *manifest* policy intended to be promoted." (Emphasis added.) Further, "statutes are not to be read with literalness that destroys meaning, intention, purpose or beneficial end for which the statute has been designed." *(Ibid.)* This permissiveness of departure from literal language, however, appears to address the situation where, in light of the statute's explicit intent, the words, ill-chosen, make no sense in terms of application. *(See, e.g., Matter of Caraballo v Community School Bd. Dist. 3,* 49 NY2d 488.)

The purpose to be examined would be that of the revival statute, not the purpose of section 202. The objective of the revival statute appears to be to afford relief in tort to hapless victims of a tragedy which they had no part in making. To construe the statute in the way urged by the defendants would be to subvert its beneficial purposes, giving recognition to the increasing mobility of Americans, the complexity of determining pernicious consequences of modern "wonder drugs", and the long-term consequences of the ingestion of medical drugs, the lethal consequences of which may not become apparent for a generation or more. Both the literal language "notwithstanding any other provision of law" as well as the "equity of the statute" *(see, Heydon's Case,* 3 Coke Rep 7a, 76 Eng Rep 637 [Ex 1584]) support plaintiff's position. To deny the plaintiff the right to seek legal redress in this case, because her mother lived in New Jersey at the time she took DES, would be the equivalent of the long-time rejected punishment of attainder and corruption of the blood by which the acts of the mother (which in this case were innocent) are used to penalize the daughter.

However, all the speculation as to whether plaintiff is to be

afforded the beneficial effect of the revival statute is predicated on an erroneous premise. What is significant is that plaintiff commenced an earlier action in 1980, in New York, and *after* the enactment of the revival statute. The extensive discussion as to where the cause of action arose, or whether the revival statute protects a nonresident, is irrelevant. Although plaintiff was not a resident when the DES was ingested (since she was not yet born) nor when injury manifested itself, she commenced a prior action in New York on December 29, 1980, which, significantly, was then dismissed by application of New York's Statute of Limitations. Consequently, when, on August 6, 1986, she brought a new action under the revival statute, she *was* then an "injured New Yorker" whose day in court in New York initially had been precluded for untimeliness and whose situation is expressly covered by the language of the statute: "[E]very action * * * which was dismissed * * * solely because the applicable period of limitations * * * had expired is hereby revived and an action thereon may be commenced * * * within one year". The statutory language simply revives such claims which had been brought in New York courts and which had been dismissed in New York by operation of the Statute of Limitations; it does not appear to exclude those causes of action for toxic torts which had accrued in other forums. Hence, plaintiff herein should be accommodated by the statute, and deemed a New York resident, notwithstanding the lack of language which is explicit on this point.

The 1985 Supplementary Practice Commentaries to CPLR 202 (McLaughlin, McKinney's Cons Laws of NY, Book 7B, 1989 Pocket Part, at 41-42) relied upon by defendants actually supports the above conclusion. Citing *Antone v General Motors Corp.* (64 NY2d 20, 29), Judge McLaughlin notes that plaintiff's domicile may not be relevant, although plaintiff's residence in New York, even if it is not the domicile, would be the focus. The *Antone* case departs from the instant case in that it involved a car accident in Pennsylvania which necessarily was contemporaneous with the accrual of the cause of action. The whole nature of toxic torts, however, which the revival statute addressed, makes accrual of the cause of action a much more elastic concept. Defendant Upjohn even seems to concede that plaintiff "now apparently resides in New York". Accordingly, the conclusion is warranted that the legislative purpose of the revival statute was to include the instant plaintiff within the class of persons to be accommodated by that statute. Defen-

dants' conclusion that the legislative purpose was only to protect plaintiffs who were residents when the cause of action accrued or, in the alternative, that the Legislature intended that CPLR 202 act as a limiting device upon a party such as plaintiff, would not seem warranted. While not every literal nuance of a statute need be "slavishly" adhered to (McKinney's Cons Laws of NY, Book 1, Statutes § 111), the clear meaning of the introductory phrase "[n]otwithstanding any other provision of law" seems not only clear on its face, but is not inconsistent with the body of the statute nor with the above legislative memoranda.

Hence, if plaintiff has been a resident, and it appears that such is the case (see, Antone v General Motors Corp., supra, at 30, for definition; see also, at 30, n 4, distinguishing Banasik v Reed Prentice Div., 28 NY2d 770, in which plaintiff did not have a residence at the time of her accident) insofar as she has "a significant connection * * * living there for some length of time during the course of a year" (Antone v General Motors Corp., at 30), the "hurdle" of CPLR 202 never arises and plaintiff is entitled to invoke the revival statute. If plaintiff's residency is questionable (and one wishes that the record was clearer), then the facial reading of the revival statute would appear to nullify the limitation otherwise imposed by CPLR 202. By limiting this introductory language only to CPLR 214, the Statute of Limitations, and not extending it so as to nullify CPLR 202, the borrowing statute, the court below appears to have read in a statutory purpose which is not supported either by expressed language or by legislative memoranda.

Finally, while forum shopping is not to be encouraged, the public policy impact of reading the subject statutory language literally will be limited. The plaintiff may well be the only person in her category who brought an earlier action in New York, dismissed because of the Statute of Limitations, and who now proceeds under the revival statute. The revival statute opened only a one-year window period which has since closed, thereby limiting the class of plaintiffs which may take advantage of such an interpretation. That defendant Upjohn refers to two other such cases by the same trial court ought not be viewed as undermining such a conclusion.

Defendants argue that the Legislature did not intend to revive the claims of those plaintiffs whose causes of action accrued in States other than New York. Nothing persuasive has been cited, however, in the legislative history of the bill in

support of this proposition. In fact, the best evidence to the contrary is the language of the statute itself that its provisions were to apply "[n]otwithstanding any other provision of law".

If the Legislature intended that the borrowing statute should be applicable, why did it not say "[n]otwithstanding any other provision of law except section 202 of the Civil Practice Law and Rules" instead of setting forth a blanket exclusion of *any* other provision of law? Certainly the Legislature was aware of the existence of the borrowing statute, and if it had so chosen, it could have made it clear that it was still to be applicable to revived claims. Defendants are, in effect, arguing that the Legislature *should have* barred claims accruing in other States, a judgment which is not for our courts to make, but for the Legislature.

It is unnecessary for this court to dwell on the meaning of the language of the revival statute ("[n]otwithstanding any other provision of law") which may or may not exclude the application of CPLR 202 with respect to nonresidents. Plaintiff in this case *was* a New York resident. It should be noted that at the time that plaintiff commenced her action against Squibb, she was a New York resident, having personally verified a complaint which set forth that "[p]laintiff is a resident of the City of New York, Borough of Manhattan". Thus, at the time that she commenced the action, she was indeed an "injured New Yorker". In fact, when her prior action was dismissed, it had been on the basis of the application of New York's Statute of Limitations. It was precisely for the purpose of affording relief to injured victims of toxic substances, like this plaintiff, that the Legislature enacted the revival statute. Thus, Senator Ronald B. Stafford, in a legislative memorandum dealing with the toxic torts/discovery Statute of Limitations, noted, *inter alia:* "This bill will provide relief to injured New Yorkers whose claims would otherwise be dismissed for untimeliness simply because they were unaware of the latent injuries until after the limitation period had expired" (1986 NY Legis Ann, at 287).

In this connection, defendants contend that our courts have narrowly construed the borrowing statute to apply only to those who were New York residents at the time the cause of action accrued *(see,* McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C202:2, at 82, citing *Cellura v Cellura,* 24 AD2d 59). Thus, according to defendants' interpretation, a New York resident living here

for the last 10 or 15 years could easily have been barred from bringing an action under the revival statute by application of the borrowing statute, assuming she was conceived and born in another State where her mother ingested the toxic material. Another resident for 10 or 15 years, whose mother lived in New York at the time of conception up to birth, would not be so barred. Such a narrow interpretation in this case would be a violation of the Equal Protection and Due Process Clauses of the US Constitution 14th Amendment, and the NY Constitution, article I, §§ 6 and 11. It would be a violation because it would create an arbitrary class of victims of toxic substances who were residents of New York when their actions were commenced, but because their mothers fortuitously were exposed to the substances many years earlier in another State, before these plaintiffs were ever born, were exempted from revival by such a happenstance. Such a result would turn a statute which is not unconstitutional on its face into a statute which is unconstitutional as applied to certain persons or under certain circumstances *(see, e.g., United States v Grace,* 461 US 171; *Matter of Diocese of Rochester v Planning Bd.,* 1 NY2d 508).

The trial court also denied plaintiff's motion to dismiss defendants' ninth and twelfth affirmative defenses. The ninth affirmative defense contends that the revival statute was unconstitutional. The twelfth affirmative defense asserts that the action is time barred by "the applicable statute of limitations". If this court reverses and reinstates the action, then this affirmative defense becomes moot.

Accordingly, I would reverse the order and judgment appealed from, deny defendant's cross motion for summary judgment and grant plaintiff's motion to dismiss the ninth and twelfth affirmative defenses.

KUPFERMAN, P. J., and WALLACH, J., concur with SULLIVAN, J; ASCH, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered on July 10, 1987, affirmed, without costs and without disbursements.