MARIANNE MILLAR-MINTZ *et al.*, Plaintiffs-Appellants, v. ABBOTT LABORATORIES *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—92—2736

Opinion filed November 21, 1994.

David A. Novoselsky & Associates, of Chicago (David A. Novoselsky and Margarita T. Kulys, of counsel), for appellants.

Lord, Bissell & Brook, of Chicago (Hugh L. Moore, Ann Marie Walsh, and Diane I. Jennings, of counsel), for appellee Abbott Laboratories.

Kelley, Drye & Warren, of Chicago (John Dames and Mary K. Periolat, of counsel), and Shook, Hardy & Bacon, of Kansas City, Missouri (Timothy A. Pratt and Mark C. Hegarty, of counsel), for appellee Eli Lilly and Company.

Bowles, Keating, Epsteen, Hering & Lowe, of Chicago (Robert G. Epsteen, of counsel), for appellee E.R. Squibb & Sons, Inc.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (Melinda Kollross, of counsel), for appellee Rexall Corporation.

Johnson & Bell, Ltd., of Chicago (Robert L. Nora, of counsel), for appellee Merck & Company.

Sidley & Austin, of Chicago (Michael W. Davis, Rick L. Jett, and Kathleen A. Ravotti, of counsel), for appellee The Upjohn Company.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

This appeal arises out of a pharmaceutical product liability action brought by plaintiffs, Marianne Millar-Mintz (Marianne) and Dan Mintz, against various drug companies, seeking recovery for injuries allegedly caused by Marianne's mother's ingestion of diethylstilbestrol (DES). The trial court granted the drug companies' joint motion to dismiss plaintiffs' second amended complaint, on the ground that our supreme court's decision in *Smith v. Eli Lilly & Co.* (1990), 137 Ill. 2d 222, 560 N.E.2d 324, precluded plaintiffs' claim. Plaintiffs now appeal the dismissal of count II of their second amended complaint, contending that the trial court erred in refusing to apply the substantive law of New York to their claim. For the following reasons, we affirm the judgment of the trial court.

The record reveals the following relevant facts. Marianne was born in New York on February 15, 1949. While Marianne's mother, Gussie Millar, was pregnant with Marianne, Gussie took DES on a prescription from her obstetrician. In 1969 or 1970, Marianne moved to California. Sometime in the mid 1970s, Marianne was examined at a DES clinic in California, where she was advised that she had vaginal adenosis, a benign condition that was associated with prenatal DES exposure. In 1977, Marianne married Dan Mintz, and the couple moved from California to Illinois, where they continue to reside.

Plaintiffs first attempted to have a child in 1981. After failing to conceive, Marianne sought medical care from Dr. James Schreiber, the former head of reproductive endocrinology at the University of Chicago Hospitals. In 1983, Dr. Schreiber informed Marianne that

she had an unusual T-shaped uterus and abnormally small cervix, that these abnormalities were associated with prenatal exposure to DES and that they prevented her from conceiving. Dr. Schreiber continued to examine and treat Marianne for her inability to conceive until 1986, including two attempts at *in vitro* fertilization. In 1986, Dr. Schreiber advised Marianne that her infertility problems were consistent with his previous diagnosis.

On November 12, 1986, plaintiffs filed a two-count complaint against seven pharmaceutical companies that had manufactured and sold DES, alleging strict products liability (count I) and negligence (count II). In count II, plaintiffs alleged that they could not identify the manufacturer of the DES ingested by Gussie Millar during her pregnancy with Marianne, but that all manufacturers of DES were liable for Marianne's infertility under a "market share liability" theory. On November 3, 1987, the trial court, Judge Myron T. Gomberg presiding, struck portions of count I of plaintiffs' complaint and granted leave to plaintiffs to file an amended complaint. Subsequently, in separate orders, the trial court, Judge Thomas P. Quinn presiding, granted defendants' separate motions to dismiss count I of plaintiffs' first amended complaint as barred by the Illinois statute of repose.

On November 14, 1990, the trial court, Judge Paddy H. McNamara presiding, dismissed count II of plaintiffs' first amended complaint on defendants' motions for judgment on the pleadings based on the supreme court's holding in *Smith v. Eli Lilly & Co.* (1990), 137 Ill. 2d 222, 560 N.E.2d 324. In *Smith*, our supreme court rejected the "market share liability" theory as viable for tort claims in Illinois. At that time, the trial court granted plaintiffs' motion to file a second amended complaint, providing plaintiffs an opportunity to assert some other theory of recovery.

On November 21, 1990, plaintiffs filed their second amended complaint in two counts, alleging in count II a modified theory of market share liability as announced in the New York case, *Hymowitz v. Eli Lilly & Co.* (1989), 73 N.Y.2d 487, 539 N.E.2d 1069, 541 N.Y.S.2d 941, and asserting for the first time that the substantive law of New York governed their action. Defendants filed a joint motion to dismiss plaintiffs' second amended complaint pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619 (now 735 ILCS 5/2—619 (West 1992))), arguing that under a "choice of law" analysis, Illinois has the most significant relationship to plaintiffs' claim and that plaintiffs' claim is precluded by *Smith*.

After fully considering the briefs of both parties, on June 29, 1992, the trial court ruled as follows:

"The Plaintiff, I believe, suffered her injury when she found out that she was unable to have children. At that point, then, she has the right to take whatever steps necessary *** to protect her claim. And I think, as a matter of public policy, if we required Plaintiffs then to travel back to whatever state or location their mother 20 to 40 years before ingested a drug, that that would be against the public policy of the State of Illinois ***.

* * *

For those reasons, I think that Illinois is really the state with the most interest in this action. And the Illinois courts have told us that they are not recognizing this particular cause of action.

Additionally, I'd say that it appears to me that New York has specifically stated that they would not recognize the Plaintiff's case in New York; that there was a very short window of opportunity that was available only for New York residents to bring their D.E.S. claims. *** The New York courts have acted and said that they are not recognizing claims brought on behalf of people who are residents of other states."

The trial court granted defendants' motions to dismiss plaintiffs' second amended complaint on the ground that the substantive law of Illinois, and the supreme court's decision in *Smith*, applied and precluded plaintiffs' new market share claim. Plaintiffs' timely appeal followed.

The issue before this court is whether the trial court erred in dismissing plaintiffs' second amended complaint as precluded by Illinois law.

■ Under Illinois choice of law principles, the law of the State where the injury occurred determines the rights and liabilities of the parties unless Illinois has a more significant relationship with the occurrence and with the parties, in which case Illinois law applies. (*Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 45, 262 N.E.2d 593; *Walters v. Maren Engineering Corp.* (1993), 246 Ill. App. 3d 1084, 1090, 617 N.E.2d 170.) Factors to be considered by the court in determining the most significant relationship include: (a) the place where the injury occurred; (b) the place where the conduct occurred; (c) the domicile, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship of the parties is centered. *Ingersoll*, 46 Ill. 2d at 47-48.

Plaintiffs initially argue that the trial court improperly dismissed plaintiffs' second amended complaint for failure to state a cause of action, and as barred by the doctrines of *res judicata*, collateral estoppel, judicial estoppel, and waiver. The record shows that, initially, each of the defendants filed separate motions to dismiss

plaintiffs' second amended complaint under section 2—619, setting forth various grounds as listed above. However, subsequently, the defendants filed one joint motion to dismiss plaintiffs' second amended complaint on the ground of choice of law, and the record reflects that the trial court rendered its decision on the issue of the choice of law, not on any of these other doctrines.

Regarding the choice of law, plaintiffs maintain that Marianne's injury occurred in New York *in utero*, and that Marianne and her mother "were New York residents at the time of the injury," and, therefore, New York law applies to plaintiffs' claim. Plaintiffs argue that the conduct, *i.e.*, Gussie's prescription for and ingestion of DES, took place in New York, and Marianne's *in utero* exposure took place in New York. Plaintiffs further argue that the domicile and place of incorporation of only one defendant, Abbott Laboratories, is Illinois, and that the place where the relationship of the parties is centered is New York because none of the parties had any contacts with each other in Illinois. Plaintiffs further argue that New York has the superior interest in protecting the rights of persons injured in New York and that this court need not consider the "public policy" of Illinois, which would preclude a market share liability action. Plaintiffs conclude that: "Illinois lacks any real concern for plaintiffs who were New York residents at the time of the injury."

Defendants respond that plaintiffs' assertion that the injury occurred in New York is a legal conclusion, not an allegation of fact, which is not admitted for purposes of a motion to dismiss (*Downers Grove Associates v. Red Robin International, Inc.* (1986), 151 Ill. App. 3d 310, 315, 502 N.E.2d 1053), and has no basis in the record. Defendants argue that the record refutes plaintiffs' claim that the place of Marianne's injury was New York, *in utero*, rather than Illinois. In support, defendants cite *Trahan v. E.R. Squibb & Sons, Inc.* (M.D. Tenn. 1983), 567 F. Supp. 505, wherein the court analyzed the place of injury regarding a plaintiff's claim for a damaged cervix as a result of alleged *in utero* exposure to DES, concluding that the injury "neither occurs, nor is it normally subject to discovery, until pregnancy." *Trahan*, 567 F. Supp. at 509.

■ *Trahan* is consistent with Illinois law, which provides that a legally recognized injury occurs only when the plaintiff has suffered an actual "loss." When a plaintiff's injury is latent, *i.e.*, does not manifest itself until some time after defendant's alleged wrongful act occurred, the plaintiff's cause of action is said to accrue when plaintiff knows or reasonably should know he or she has been injured. This "discovery rule" obtains with respect to latent physical injuries regardless of whether the plaintiff's injury is sustained as the result

of a single traumatic event or several ostensibly innocuous circumstances. *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 421 N.E.2d 864; *VaSalle v. Celotex Corp.* (1987), 161 Ill. App. 3d 808, 515 N.E.2d 684.

■ The record shows that Marianne learned of the abnormalities of her reproductive organs in 1983, but did not discover that she was infertile until 1986. The record includes Marianne's deposition testimony wherein she stated as follows:

> "MARIANNE: I don't know that I suffered any damage as a result of her [Marianne's mother] ingesting it [DES]. Its the fact that I later found out that I was infertile.
>
> COUNSEL: Other than infertility, are you claiming any other injuries?
>
> MARIANNE: No."

Regarding the domicile of the parties, the record indicates that Marianne's mother is not a plaintiff in this action. The record does not indicate that plaintiff Dan Mintz, whom Marianne met in California and married in California in 1977, was a resident of New York at any time. The record further indicates that plaintiffs currently live in Illinois and have lived in Illinois since 1977. The record reveals that plaintiffs seek damages for injuries discovered in Illinois in 1986 and as a result of years of treatment by Illinois physicians.

In addition, as the trial court noted, plaintiffs' claim is not viable under New York law. In *Besser v. E.R. Squibb & Sons, Inc.* (1989), 146 A.D.2d 107, 539 N.Y.S.2d 734, *aff'd* (1990), 75 N.Y.2d 847, 552 N.E.2d 171, 552 N.Y.S.2d 923, the New York Supreme Court, Appellate Division, held that New York's revival statute, which permitted a one-year window period in which to revive causes of action otherwise barred by law, arising out of exposure to, *inter alia*, DES, applied to New York residents only, and "not the entire world." (*Besser*, 146 A.D.2d at ___, 539 N.Y.S.2d at 735.) The *Besser* court held that a plaintiff who was a resident of New Jersey at the time her injury manifested itself, a resident of Pennsylvania at the time her cause of action accrued, and a resident of Virginia at the time she commenced her lawsuit was barred from proceeding with her claim under New York law.

The record in the present case reveals that plaintiffs are not New York residents. Thus, we find that the trial court properly concluded that Illinois has the most significant relationship with the occurrence and with the parties in this case, and that plaintiffs' claim is barred under New York law.

Plaintiffs further argue that even if Illinois is the proper legal forum, *Smith v. Eli Lilly & Co.* (1990), 137 Ill. 2d 222, 560 N.E.2d

324, does not preclude their claim because the opinion does not actually state that the market share liability theory is against the "public policy" of Illinois.

We disagree. It appears that our supreme court's decision in *Smith* was the first attempt to reconcile case law announcing the market share liability approach to apportioning damages. In *Smith*, the supreme court examined a claim against numerous drug companies for injuries allegedly caused to a plaintiff *in utero* by DES. The plaintiff could not identify the manufacturer of the drug taken by her mother during her pregnancy and, in her complaint, alleged a market share liability theory as articulated by the courts in other States. The supreme court examined the law of the four States which adopted some form of market share liability, including the law of New York, as announced in *Hymowitz v. Eli Lilly & Co.* (1989), 73 N.Y.2d 487, 539 N.E.2d 1069, 541 N.Y.S.2d 941. The court found that the New York law

> "is the most radical in its departure from established tort principles and it is admittedly flawed in that it cannot equate liability to actual harm caused." (*Smith*, 137 Ill. 2d at 245.)

While the *Smith* court did not find the market share liability theory invalid *per se*, the court, in a strongly worded opinion, squarely rejected this theory as unworkable under existing Illinois law. The court concluded that "market share liability is not a sound theory" and "should not be applied in cases brought by plaintiffs who were exposed to DES while *in utero*." (*Smith*, 137 Ill. 2d at 251.) The court further stated that it would decline to recognize market share liability "because of the infirmities in the proposed theory" and because it

> "is too great a deviation from a tort principle which we have found to serve a vital function in the law, causation in fact, especially when market share liability is a flawed concept and its application will likely be only to a narrow class of defendants." *Smith*, 137 Ill. 2d at 268.

Public policy is defined as " '[j]udicial decisions, legislation and constitutions as well as customs, morals and notions of justice which may prevail in a state.' " (*Marchlik v. Coronet Insurance Co.* (1968), 40 Ill. 2d 327, 332, 239 N.E.2d 799, quoting Speidel, *Extraterritorial Assertion of the Direct Action Statute: Due Process, Full Faith and Credit and the Search for Government Interest*, 53 Nw. U. L. Rev. 179, 200 (1958).) In *Marchlik*, our supreme court determined that Wisconsin's statute permitting direct action against insurers was contrary to the public policy of Illinois, regardless of the fact that there was no legislation in Illinois prohibiting such actions. (*Marchlik*, 40 Ill. 2d

at 332.) The court found that Illinois case law could be interpreted as expressing a legislative policy against such direct actions and that Wisconsin's direct action statute was in contravention of clauses in insurance policies which are recognized in Illinois. (*Marchlik*, 40 Ill. 2d at 333.) The court concluded:

> "Foreign substantive law is not, of course, unenforceable as being contrary to public policy just because it differs from our own law, but the differences here are such as to be against our public policy." (*Marchlik*, 40 Ill. 2d at 333-34.)

In *Smith*, the supreme court stated:

> "It is tempting in this case to impose liability based on the fact that these companies profited from the sale of the type of drug which may be responsible for the plaintiff's injuries, regardless of the manufacturers' ability to cover these costs. However, this is not a strong enough reason to adopt a theory which would alter our tort law significantly while only providing a markedly flawed alternative with unclear future ramifications. [Citations.] Perhaps, as a number of other courts and commentators have suggested, this change is most appropriate for the legislature to develop, with its added ability to hold hearings and determine public policy." (*Smith*, 137 Ill. 2d at 262-63.)

While the court did not utter the "magic language" that the market share liability theory was against "public policy," it is clear that the supreme court has found the concept unworkable under the law of the State of Illinois. We therefore hold that the trial court properly dismissed plaintiffs' second amended complaint as precluded by Illinois law.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.