JANE SINGER et al., Appellants, v ELI LILLY & COMPANY et al., Respondents.

First Department, January 4, 1990

### APPEARANCES OF COUNSEL

*Paul D. Rheingold* of counsel *(Rheingold & McGowan, P. C.,* attorneys), for appellants.

*Russel H. Beatie, Jr.,* of counsel *(Samuel J. Abate, Jr.* and *Susan E. Kelty* with him on the brief; *Brown & Wood,* attorneys), for Eli Lilly and Company, respondent.

*Jay P. Mayesh* of counsel *(William A. Rome, Karl E. Seib, Jr., Robert D. Wilson, A. Edward Grashof* and *Sheila Moeller Fessler* with him on the brief; *Stroock & Stroock & Lavan; Patterson, Belknap, Webb & Tyler;* and *Winthrop, Stimson, Putnam & Roberts,* attorneys), for The Upjohn Company and others, respondents.

*Joseph M. Costello* of counsel *(Carl H. Sword* with him on the brief; *Costello & Shea,* attorneys), for American Home Products, respondent.

*Robert M. Dato* of counsel *(David J. Fleming, Nancy Lucas*

*Haniotis, Barry M. Epstein, Marc S. Klein* and *Lindsay H. Lew* with him on the brief; *Dickson, Carlson & Campillo,* and *Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P. A.,* attorneys), for E. R. Squibb, respondent.

*Thomas C. Rice* of counsel *(Andrew S. Amer* with him on the brief; *Simpson Thacher & Bartlett,* attorneys), for Winthrop Pharmaceuticals, a Division of Sterling Drug, Inc., respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

Plaintiffs, a husband and wife, brought this action against eight manufacturers[1] of the prescription drug, diethylstilbestrol (DES), seeking the recovery of damages for injuries allegedly sustained as a result of the wife's *in utero* exposure to the drug in 1949. Although expressly brought pursuant to New York's "Toxic Tort Revival Statute" (L 1986, ch 682, § 4), and concededly commenced more than seven months after the expiration of the statute's one-year window period, effective July 30, 1986, plaintiffs contend that the action is nonetheless timely by virtue of the commencement of two purported class actions within the one-year window period.[2]

Defendant American Home Products Corp., pursuant to CPLR 3211 (a) (5), moved to dismiss on the ground that the action was time barred. Each of the other defendants thereafter moved on the same ground. In arguing that the pendency of two class actions filed within the window period on behalf of women similarly exposed to DES tolled the revival period, plaintiffs relied on *American Pipe & Constr. Co. v Utah* (414 US 538), which held that in certain circumstances the commencement of a class action tolls the running of the applicable Statute of Limitations as to all putative members of the class.

■ The motion court granted the motions, holding that commencement of the action within the one-year window period was a condition precedent to bringing a suit for per-

---

1. Merck & Company, Inc. was named but never served.

2. *Soberman v Lilly & Co.* (Sup Ct, NY County) was commenced in July 1987 and dismissed on March 22, 1988 (NYLJ, Mar. 22, 1988, at 13, col 1, *mot to dismiss appeal granted* App Div, 1st Dept, Jan. 24, 1989) seven days after the instant action was instituted. *Kelly v Lilly & Co.* (Sup Ct, NY County) was also commenced in July 1987. A motion for class certification, submitted on December 21, 1988, is still pending.

sonal injury arising out of DES exposure. Thus, the court reasoned, that period could not be affected by the tolling provisions applicable to Statutes of Limitation, even if New York courts were to adopt the Federal doctrine, as expressed by *American Pipe (supra),* which permits tolling of a Statute of Limitations during the pendency of a class action. We affirm.

On July 30, 1986, Governor Cuomo signed into law a "tort reform" package, including the revival statute, which provided that any action seeking damages for personal injury, property damage or death caused by the latent effects of exposure to five substances, including DES, that was time barred or had been previously dismissed because the applicable period of limitations had expired, "is hereby revived and an action thereon may be commenced provided such action is commenced within one year from the effective date of this act" (L 1986, ch 682, § 4).

The revival provision was the second part of a two-pronged reform to remedy the inequity of New York's former date-of-exposure rule for injuries caused by the latent effects of toxic substances. In that regard, the central focus of the reform package was the adoption of a discovery Statute of Limitations (L 1986, ch 682, § 2, adding CPLR 214-c). Henceforth, an injured party would be permitted to assert a cause of action within three years from the date of discovery of the injury, regardless of the time of exposure. *(Besser v Squibb & Sons,* 146 AD2d 107, 111-112, *lv granted* 151 AD2d 306.)

The revival statute was itself a product of compromise. "Legislative history indicates that the five named substances were distinguished from other toxic substances (§ 2) as a result of compromise between the Assembly (which had voted to permit revival for all toxic substances) and the Senate which wanted to limit revival. The Legislature ultimately limited revival based upon the existence of an identifiable group affected and the resulting ability to predict the future costs of such revival. The Legislature was apparently concerned that under a broader revival statute, the large number of unknown victims would create unpredictable risks and costs." *(Hymowitz v Lilly & Co.,* 136 Misc 2d 482, 484, *affd* 139 AD2d 437, *affd* 73 NY2d 487, *cert denied* — US —, 110 S Ct 350 [Oct. 30, 1989].) Thus, the limitation of revival to a one-year period and the selection of only five substances reflected an intent to limit the effects of revival.

We agree with the motion court's analysis that the revival

statute's one-year period is a condition precedent, rather than a Statute of Limitations. "Where a liability is created by a statute, and the same statute that creates the liability limits the right of action thereon to a stated period of time, the effect is that at the termination of that time the liability expires, leaving nothing thereafter on which to predicate an action." *(Gatti Paper Stock Corp. v Erie R. R. Co.,* 247 App Div 45, 47, *affd* 272 NY 535; *see also, Cimo v State of New York,* 306 NY 143, 150; *Romano v Romano,* 19 NY2d 444, 448.) Thus, compliance with the time period is a substantive element of the cause of action. *(See, Denkensohn v Ridgway Apts.,* 13 Misc 2d 389, 391 [App Term, 2d Dept] holding that where the same statute that creates the cause of action prescribes the time for its commencement, such "period of limitation is deemed a matter of substance"; *accord, Wesling v Solovey,* 277 App Div 834.) In those instances where the statute does not so provide, the question of whether the time limitation is a condition precedent or a Statute of Limitations is ultimately one of legislative intent. *(Kahn v Trans World Airlines,* 82 AD2d 696.)

In *Romano (supra)* the Court of Appeals affirmed the dismissal of an action for annulment brought more than three years after the discovery of the fraud giving rise to the action. The cause of action was dependent on the annulment statute, which incorporated a time limitation therein. The statute, as the court noted, "literally creates the cause of action for annulment of marriage for fraud by providing that such an action 'may be maintained' " (19 NY2d, at 447). Distinguishing a time limitation inherent in the cause of action from one which merely provides a Statute of Limitations, the *Romano* court characterized the former as a "qualification annexed to the created right" *(supra,* at 448). In such an instance, " 'there is no right of action whatever independent of the limitation; a lapse of the statutory period operates * * * to extinguish the right altogether.' " *(Supra,* at 447.)

Similarly, the literal language of the revival statute, upon which any DES action based on a time-barred claim is dependent, supports the conclusion that commencement of the action within the window period is a condition precedent to the maintenance of such action. The statute clearly states that any claim for personal injuries arising out of exposure to DES is revived, "provided such action is commenced within one year from the effective date of this act". Significantly, the time period is contained within the statute itself. Moreover,

the statutory language—"provided such action is commenced" —conditions the exercise of the right. Thus, the commencement of an action within the one-year window is integrally tied to the exercise of the right.

In *Hill v Board of Supervisors* (119 NY 344, 346-347), upon which the motion court relied, a property damage action was brought under a statute stating: "no action shall be maintained, under the provisions of this act, unless the same shall be brought within three months after the loss or injury." In holding the action untimely, the Court of Appeals stated, "It must be evident that, as this action is brought under a special law and is maintainable solely by its authority, the limitation of time is so incorporated with the remedy given as to make it an integral part of it and the condition precedent to the maintenance of the action at all." *(Supra,* at 347.) Similarly, in passing the revival statute, the Legislature, as the motion court noted, "revived extinguished claims and in a sense created a new right of action". Absent revival, plaintiffs were without a remedy for their claimed injuries. The action is maintainable solely by virtue of the revival statute's authority.

Claiming that the revival statute did not "create" a right since "there was always a right to sue for DES-induced injuries", plaintiffs argue that the one-year window period is not a condition precedent. That common-law tort remedies for such injuries predated the revival statute, however, is beside the point. In a line of cases construing the Warsaw Convention, courts have held that the two-year period contained therein is a condition precedent and, as such, not subject to tolling. In deciding whether the Convention created a cause of action, the courts did not look to the preexistence of the theory of recovery *(see, Kahn v Trans World Airlines, supra,* 82 AD2d, at 705), but, rather, to the public policy as expressed by the drafters and reflected in the convention's legislative history—the establishment of " 'a uniform body of world-wide liability rules to govern international aviation' ". *(Supra,* at 709, quoting *Reed v Riser,* 555 F2d 1079, 1090, *cert denied* 434 US 922; *see also, Seguritan v Northwest Airlines,* 86 AD2d 658, *affd* 57 NY2d 767.) Were the Warsaw Convention's specified period of limitation subject to the numerous tolling rules of the various jurisdictions, the Convention's goal of uniformity would be defeated. The *Kahn* court stated, "[I]t is readily apparent that the time limitation incorporated in article 29 was intended to be in the nature of a condition precedent to

suit, and that it was never intended to be extended or tolled by infancy or other incapacity." *(Supra,* 82 AD2d, at 709.)

So too here, even if the revival statute's literal language were not dispositive, its legislative history, as construed by the Court of Appeals in *Hymowitz v Lilly & Co.* (73 NY2d 487, *supra),* compels the conclusion that commencement of an action within the window period is a condition precedent. In *Hymowitz* the court upheld the statute in the face of an argument that it was unconstitutional, as applied, since the plaintiff, though aware of her DES-related injuries, had failed to bring an action prior to the expiration of the existing three-year limitation period. It reasoned, "[T]he Legislature properly determined that it would be more fair for all plaintiffs to uniformly now have one year to bring their actions, rather than for the courts to begin drawing arbitrary lines transecting this area's shades of gray." *(Supra,* at 515.) In keeping with that legislative policy of uniformity, the revival statute must be construed as a condition precedent.

Plaintiffs also argue that various tolling provisions are available to other tort victims commencing actions pursuant to CPLR 214 or 214-c, and that a revived action "should not be treated more restrictively than an ordinary one." It is well settled, however, that revived actions are treated more restrictively. "Revival is an extreme exercise of legislative power. * * * Uncertainties are resolved against consequences so drastic." *(Hopkins v Lincoln Trust Co.,* 233 NY 213, 215.)

The need to construe narrowly and limit the revival statute was, in part, the rationale of this court's decision in *Besser v Squibb & Sons* (146 AD2d 107, *supra),* where we held that the revival statute had to be read in conjunction with the borrowing statute (CPLR 202). Plaintiffs argue that in so holding we engrafted onto the revival statute an already existing provision, i.e., the borrowing statute, and "ask that the revival statute be modified by the use of another legal doctrine," i.e., tolling. This argument ignores the rationale of *Besser.* The borrowing statute limited the application of the revival statute. Tolling, on the other hand, would greatly expand its application.

Even if the revival statute were a Statute of Limitations, the Federal tolling doctrine would be inapplicable here. In *American Pipe & Constr. Co. v Utah* (414 US 538, *supra),* the State of Utah commenced an antitrust action on behalf of a purported class consisting of various State and local agencies.

The District Court denied class certification because of the failure to satisfy the numerosity requirement. When the various members of the purported class then moved to intervene, their motion was denied on Statute of Limitations grounds. In finding intervention timely, the Supreme Court held that the Statute of Limitations was tolled from the time of the commencement of the class action to the time of denial of certification for all purported class members who made timely motions to intervene. *(Supra,* at 552.) Subsequently, in *Crown, Cork & Seal Co. v Parker* (462 US 345, 350), the court extended this principle to those putative class members who timely filed individual actions after certification was denied.

In *American Pipe (supra)* the Supreme Court was faced with two conflicting policies—those inherent in the rules providing for class actions, e.g., judicial economy and efficiency in litigation, and those inherent in Statutes of Limitation, e.g., protecting defendants from unfair or stale claims. As to the former, the court reasoned that unless the filing of a class action tolled the Statute of Limitations, potential class members would have an incentive to make intervention or joinder motions to protect themselves against the possibility that certification would be denied *(supra,* at 551), thereby depriving the class action of its efficacy.

In addressing the problems which surround Statutes of Limitation, the court stressed a defendant's right to be apprised in a timely fashion of his potential liability. As long as the class complaint puts a defendant on notice concerning the "essential information necessary to determine both the subject matter and size of the prospective litigation" *(supra,* at 555), application of the tolling doctrine would be permissible, although not necessarily guaranteed. The court held that in order to both preserve the class action device and ensure fairness to defendants, "[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *(Supra,* at 554; *accord, Shimazaki Communications v American Tel. & Tel. Co.,* 647 F Supp 10.) Thus, before considering whether the holding of *American Pipe (supra)* should be imposed on the revival statute, a threshold question is presented as to whether plaintiffs would, in the first instance, even be members of the two class actions relied upon, *Soberman v Lilly & Co.* and *Kelly v Lilly & Co.,* both of which were brought in the

Supreme Court, New York County. Since they are not, any application of *American Pipe* is foreclosed.

*Soberman* was brought on behalf of a class of individuals who had suffered minor injuries allegedly caused by DES, but who, with the exception of the named plaintiff, had not commenced an action before the expiration of the one-year window period. According to the complaint, the members of the class were aware of their injuries and either chose not to institute suit for what they regarded as minor injuries or were unable to retain counsel to represent them individually. Indeed, the complaint alleged, "as a condition for membership in [the] class [the putative members had] to waive any claim for the conditions of which they [were] aware." In granting defendant's motion to dismiss for failure to state a cause of action,[3] the court stated, "The express purpose of the class action is to preserve the statute of limitations for possible future serious injuries". (NYLJ, Mar. 29, 1988, at 13, cols 1, 2.) Unlike the members of the *Soberman* class, plaintiffs herein have sought recovery, not for future injuries, but for present ones. Thus, plaintiffs do not fall into the purported *Soberman* class and would not be entitled to the benefits of the tolling doctrine. Hence, they cannot rely on *Soberman* to toll the revival statute to render this action timely.

The *Kelly* class action was brought by 126 named plaintiffs seeking relief on behalf of themselves and "others similarly situated" against 24 purported DES manufacturers, sued both individually and as representatives of a class of DES manufacturers. The plaintiffs allege that DES "has caused, and is continuing to cause, injuries requiring continuous medical treatment, which are permanent in nature to each plaintiff." In addition, the *Kelly* plaintiffs allege that the unnamed class members have been exposed to DES *in utero* but "may or may not know" of such exposure, and "have or may have contracted or in the future may contract" various injuries which allegedly "will require lifelong, regular continuing treatments." The complaint further alleges that the purported class members are entitled to unspecified equitable relief to cure their "lack of * * * financial ability to obtain adequate medical examinations and care in time to prevent or arrest" injuries allegedly caused by the DES exposure. As alleged in the complaint and in their motion for class certification, the *Kelly* plaintiffs seek the establishment of a medical monitor-

---

3. Soberman's appeal was dismissed by this court as untimely.

ing fund. Plaintiffs here, however, sue, not for conditions which they "may contract" and which allegedly will require "lifelong * * * treatment" to monitor, but for existing injuries. They seek more than medical monitoring expenses. Thus, they do not qualify as members of the *Kelly* class. Since plaintiffs are members of neither the *Soberman* nor the *Kelly* class, the pendency of these two class action suits cannot be said to have put defendants on notice of the substance of the plaintiff wife's claims.

In *Jolly v Lilly & Co.* (44 Cal 3d 1103, 751 P2d 923), a DES case, the California Supreme Court was faced with the same issue as is presented here. Although the plaintiff was diagnosed in 1972 as having adenosis, a condition associated with DES exposure, and underwent a hysterectomy in 1978, she did not bring suit until nearly a year after the California Supreme Court in 1980 adopted market-share liability in *Sindell v Abbott Labs.* (26 Cal 3d 588, 607 P2d 924). The plaintiff argued that pursuant to *American Pipe* (414 US 538, *supra),* the pendency of the class action in *Sindell,* in which class certification was denied, tolled the Statute of Limitations on her own personal injury action.

In ultimately holding that *American Pipe (supra)* was inapplicable, the court compared the proposed *Sindell* class with the claims raised in plaintiff's action: "Sindell described the class as female residents of California 'who have been exposed to DES before birth and who may or may not know that fact or danger, and as a result of which, have or may have contracted or in the future may contract adenocarcinoma or vaginal or cervical adenosis or precancerous tumors of the breast or cancer of the bladder.' " *(Jolly v Lilly & Co., supra,* 44 Cal 3d, at 1120, 751 P2d, at 934, quoting the *Sindell* class complaint.) The *Sindell* class allegations sought declaratory relief and an order directing defendants to "publicize the dangers of DES * * * and to fund the establishment and maintenance of clinics to provide free examinations to the DES daughters." *(Supra,* 44 Cal 3d, at 1120, 751 P2d, at 934.) In rejecting the *Jolly* plaintiff's tolling argument, the California Supreme Court noted that the named plaintiffs in *Sindell* did not seek to certify the class as to personal injury claims, the precise claims sued upon by the plaintiff Jolly, and, thus, the class complaint did not satisfy the notice requirement stressed in *American Pipe:* "[P]laintiff's action for damages puts into issue the prenatal treatment of her mother, the specific form of DES prescribed (e.g., tablet, capsule), the

dosage taken, her mother's obstetrical history and many other issues necessarily involved in proving causation, damages and defenses—the *Sindell* class suit * * * could not have apprised defendants of plaintiff's substantive claims. Therefore, plaintiff cannot now claim that Sindell's complaint put defendants on notice of allegations related to personal injury within the statutory period of limitation so that they might prepare their defense." *(Supra,* 44 Cal 3d, at 1123-1124, 751 P2d, at 936.)

*Kelly,* like *Sindell (supra),* defines a class seeking medical monitoring against possible future medical conditions. Plaintiffs here and *Jolly* on the other hand, sue for existing personal injuries. Plaintiffs, like the plaintiff in *Jolly,* had ample opportunity to assert timely claims, but did not. Therefore, just as the earlier *Sindell* class action failed to give notice that personal injury claims were to be asserted such as those set forth in *Jolly,* the mere commencement of the *Kelly* class action did not alert defendants as to the kind of claims alleged by plaintiffs here. Thus, whether viewed as a failure to give the requisite notice or to satisfy the class membership requirement of the earlier action, the *American Pipe* tolling doctrine should not be applied here. The tolling doctrine, as Justice Blackmun warned in his *American Pipe* concurrence, "must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights. Nor does it necessarily guarantee intervention for all members of the purported class." *(Supra,* 414 US, at 561.)* In *Crown, Cork & Seal,* that admonition was echoed by three members of the court who stated that *American Pipe* was a generous rule "inviting abuse" and that the rule should not be read as leaving a plaintiff "free to raise different or peripheral claims following denial of class status." *(Supra,* 462 US, at 354 [Powell, J., concurring].) Rather, as the court warned, "when a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit,' so that 'the defendant will not be prejudiced.' * * * Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations." *(Supra,* at 355.)

Other courts throughout the country, in applying *American Pipe (supra)*, have focused on the extent to which the class action gave notice of subsequently filed claims of purported class members and have allowed tolling only where the class action served to put the defendant on notice of the individual claims. *(See, e.g., Rose v Arkansas Val. Envtl. & Util. Auth.*, 562 F Supp 1180, 1192 [WD Mo.], holding that prior class action for securities fraud tolled Statute of Limitations for purported members of class because class action provided defendant actual or constructive knowledge of identities of all claimants; *Haas v Pittsburgh Natl. Bank*, 526 F2d 1083, 1097 [3d Cir], holding that prior class action by bank credit card holders to recover usurious interest tolled Statute of Limitations because class action apprised defendant bank of substance of claims and number and generic identities of potential plaintiffs; *also, Stoddard v Ling-Temco-Vought, Inc.*, 513 F Supp 314, 334-335 [CD Cal]; *Bartlett v Miller & Schroeder Muns.*, 355 NW2d 435, 439-440 [Minn]; *First Baptist Church v Citronelle-Mobile Gathering*, 409 So 2d 727, 728-730 [Ala].)

Finally, we note that in *American Pipe (supra)* the court was obviously concerned with promoting judicial economy by avoiding the filing of superfluous actions, which is not a concern in the present case. The New York Legislature specifically drafted a revival statute that provided a one-year window period in order to induce the predictable "parameter of victims" (Record of Proceedings, NY Assem, June 24, 1986, at 87-88) to file suit within that time. Indeed, the application of *American Pipe* would result in consequences wholly at odds with the Legislature's intention in passing the revival statute, which, as a form of retrospective legislation, obliterates reasonable expectations by resuscitating claims based on events occurring many years ago, and, thus, must be narrowly construed. *(Hopkins v Lincoln Trust Co., supra*, 233 NY, at 215; *Besser v Squibb & Sons, supra*, 146 AD2d, at 115.) Were the revival statute to be construed as a Statute of Limitations and subject to tolling, any purported member of the class would be free to bring his or her own individual action long after the one-year window period had closed, thereby frustrating the Legislature's stated intention to limit the effects of revival.

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered September 7, 1988,

dismissing the complaint as time barred, should be affirmed, without costs or disbursements.

MILONAS, ELLERIN and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered on September 7, 1988, unanimously affirmed, without costs and without disbursements.