OPINION OF THE COURT
Douglas E. Hoffman, J.
Respondent Ronald G. Schneider’s motion to dismiss this *115 owner-occupancy summary holdover proceeding presents the court with an issue of apparent first impression: Whether the automatic stay provision of section 362 (a) of the Federal Bankruptcy Code (11 USC) voided petitioner Samson Evans’ service upon respondent of the predicate 120- to 150-day notice of intention not to renew respondent’s lease, thereby mandating dismissal of the subsequent owner-occupancy holdover petition.
The material facts are not in dispute. Respondent’s rent-stabilized lease expired on July 31, 1999. Pursuant to section 2524.4 (a) (4) of the Rent Stabilization Code (9 NYCRR), petitioner had to serve respondent with a notice of intention not to renew the lease no earlier than March 3, 1999 and no later than April 2, 1999, representing 120 to 150 days prior to expiration of the lease. Without serving this predicate notice, petitioner would have been required to offer respondent his choice of a one- or two-year renewal lease. Interestingly, on March 2, 1999, the day before onset of this “window period,” respondent, an attorney, filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court, Southern District of New York.
Review of the chapter 7 filing revealed alleged substantial long-extant six-figure debts, primarily arising from income taxes owed from the early 1980’s, and minimal assets. The parties appear to agree that respondent was not required to list petitioner as a creditor to receive notice of the commencement of the bankruptcy action, as there was no allegation that any rent arrears were owed to petitioner. Petitioner did not in fact receive any notice of either the March 2, 1999 filing or of the June 10, 1999 order of discharge from the Bankruptcy Court until the instant motion was filed in August 1999.
Within the window period, petitioner served respondent on March 24, 1999 with the notice of intention not to renew the lease. By service of the notice of petition and petition dated August 3, 1999, petitioner commenced the instant owner-occupancy holdover proceeding. This motion followed.
Federal bankruptcy laws preempt State laws that are inconsistent with the dual purposes of the bankruptcy laws, to permit the debtor to obtain a fresh start free of the burden of many debts and to permit the fair and orderly distribution of assets of the debtor’s estate to creditors. (Janis v Janis, 179 Misc 2d 199, 202 [Sup Ct, Westchester County 1998], citing Sen Rep No. 989, 95th Cong, 2d Sess 54-55, reprinted in 1978 US Code Cong & Admin News 5787, 5840-5841.) It also *116 stops collection efforts, all harassment and all foreclosure actions. (In re Albany Partners v Westbrook, 749 F2d 670, 676, n 9 [11th Cir 1984], citing HR Rep No. 595, 95th Cong, 1st Sess 340-342, reprinted in 1977 US Code Cong & Admin News 6296-6297.) The trustee appointed by the Bankruptcy Court is responsible for the orderly administration of the debtor’s estate. To permit this orderly administration of the debtor’s estate, section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of the bankruptcy petition. This stay is broad in scope, and includes within its ambit “a wide range of actions that would affect or interfere with property of the estate, property of the debtor, or property in the custody of the estate.” (1 Collier, Bankruptcy § 362.01, at 362-4 [3d ed 1999].) The issue presented is whether or not service of the predicate notice was subject to the automatic stay provision. Any acts taken in violation of the automatic stay are generally deemed void. (Kalb v Feuerstein, 308 US 433, 443 [1940].) Respondent posits in effect that any action affecting any aspect of respondent’s property interests was automatically stayed at the time of filing of his chapter 7 bankruptcy petition. This court disagrees, as the scope of the automatic stay is not this broad.
Although the parties dispute whether or not this predicate notice is more in the nature of a notice of termination of a tenancy or rather merely an informational notice, the nomenclature given the notice is not pertinent; instead, what is relevant is whether or not petitioner’s action in serving respondent with the predicate notice impacts upon the debtor’s estate in a manner sufficient to trigger application of the automatic stay provision. No notice of the filing of the bankruptcy petition need be given to a person or entity for the automatic stay to apply. Congress generally left the determination of property rights in the assets of a bankrupt’s estate to State law. (In re Morton v National Bank, 866 F2d 561, 563 [2d Cir 1989], citing Butner v United States, 440 US 48, 54 [1979].) “In light of this congressional policy choice, state property laws should ‘be suspended only to the extent of actual conflict with the system provided by the Bankruptcy Act of Congress.’ ” (In re Morton v National Bank, supra, at 563, quoting Butner v United States, at 54, n 9, and citations therein.) The court in which the litigation is claimed to have been stayed, Civil Court herein, must determine whether petitioner’s conduct was subject to the automatic stay. (Janis v Janis, supra, at 202.)
Courts have held that actions seeking to terminate a lease may be subject to the automatic stay provision. (In re 48th St. *117 Steakhouse, 835 F2d 427, 430 [2d Cir 1987], cert denied 485 US 1035 [1988].) At the time he filed the bankruptcy petition, respondent held a substantive contingent interest in renewal of his lease. Although respondent’s lease was to expire on July 31, 1999, rent stabilization laws provide that, in the absence of the predicate notice, respondent’s leasehold interest would not necessarily terminate on July 31, 1999, the lease expiration date, as respondent otherwise would have held the absolute right to elect to renew the lease and to continue in possession pursuant to a one- or two-year lease renewal. A rent-stabilized tenant retains a possessory interest in the apartment until a warrant of eviction has been executed, even if a warrant of eviction issues or the tenancy is terminated by notice. (B.N. Realty Assocs. v Lichtenstein, 238 Bankr 249, 257 [SD NY 1999]; 332-4 W. 47th St. Assocs. v Muniz, 1999 WL 182588, 1999 US Dist LEXIS 4060 [SD NY, Mar. 31, 1999, Hellerstein, J.].) The rationale behind judicial application of the automatic stay to any act to terminate a lease is that the lease itself is substantive property of the debtor’s estate that can be of value to the estate. At least one court has stated in dicta that this rationale applied equally to a notice of intent not to renew a commercial lease, based upon the contingent right to renewal. (Matter of Hejco, 87 Bankr 80, 83 [D Neb 1988].)
For the interrelated reasons set forth below, however, this court holds that the automatic stay provision does not extend to service of the predicate notice of intent not to renew the lease in this residential context and denies respondent’s motion. First, the debtor held no legally cognizable equity in the contingent, leasehold interest. Although the contingent lease interest may have practical value to both the tenant and landlord, it is not an interest that can properly be sold on the market and to which a monetary value can be assigned. Unlike the commercial contingent leasehold interest in Hejco (supra), or the subtenant’s commercial lease noted in 48th St. Steakhouse (supra), respondent’s contingent right to a future renewal lease does not entail an income-producing asset of the estate in bankruptcy and does not form part of the economic value of the debtor’s estate. Where, as here, there is no equitable value in the contingent interest, the administration of the estate is not affected to the extent necessary to trigger application of the protective automatic stay provision to mere service of the predicate notice. The court need not and does not reach the issue of whether the commencement or continuation of a subsequent holdover petition would be stayed if the litigation overlapped with the bankruptcy proceeding.
*118 Second, as the issue of renewal of the lease references future conduct on the part of both the debtor and his landlord, resolution of the right to the lease renewal bears little relationship to the administration of the estate of the debtor. The lease will not automatically be renewed upon its expiration. The debtor must elect whether or not to renew the lease prior to its expiration. The stay does not apply to such post-petition conduct on the part of the debtor because of the absence of a significant relationship of such post-petition conduct to the administration of the estate (see, HR Rep No. 595, 95th Cong, 1st Sess 343-344, reprinted in 1977 US Code Cong & Admin News 6300), notably debtor protection from his creditors. (In re Sonnax Indus. v Tri Component Prods. Corp., 907 F2d 1280, 1285-1286 [2d Cir 1990], citing S Rep No. 989, 95th Cong, 2d Sess 52, reprinted in 1978 US Code Cong & Admin News 5787, 5838.) Service of a notice of an intent not to renew a residential lease that will not expire for four to five months differs fundamentally in its impact upon the debtor’s estate from conduct typically stayed that seeks to institute an action or to continue an action to seek rent arrears from a debtor, arrears that constitute a monetary debt at the heart of a bankruptcy petition. Bankruptcy proceedings permit a debtor to make a fresh start from an economic perspective, free from potentially debilitating debt. It also permits the Bankruptcy Court in an orderly fashion to satisfy creditors to the extent possible and to harmonize all creditors’ interests with one another. (Fidelity Mtge. Investors v Camelia Bldrs., 550 F2d 47, 55 [2d Cir 1976], cert denied 429 US 1093 [1977].) It protects the estate from “the chaos and wasteful depletion resulting from multifold, uncoordinated and possibly conflicting litigation.” (In re Frigitemp Corp., 8 Bankr 284, 289 [SD NY 1981].) Application of the automatic stay to a necessary predicate notice concerning future conduct by debtor’s landlord that purports to eliminate a future option by the debtor to renew his residential lease does not engage any of these fundamental concerns addressed by the automatic stay provision.
Service of the predicate notice of intent not to renew the lease when it expires may be analogized to conduct to preserve, as opposed to enforce, a security interest in property. (See, 1 Collier, Bankruptcy § 362.03 [4] [a], at 362-18 — 362-19.) In Morton (866 F2d 561, 564, supra), the Second Circuit held that the automatic stay affected any act to create, perfect or enforce a lien, but did not apply to acts to extend, continue or renew otherwise valid statutory liens. This merely allowed *119 the holder of a valid lien to maintain the status quo, a policy not adverse to the bankruptcy laws and one in harmony with it. (Supra.) This was the only way under New York law to preserve the lien. (Supra.) Similarly, the mere service of the predicate notice in the instant case did not finally terminate respondent’s contingent future interest in the lease renewal. The landlord still had to commence a holdover proceeding and the tenant maintained full opportunity to contest the landlord’s allegations.
In Citizens Bank v Strumpf (516 US 16 [1995]), the Court held that the placing of an administrative freeze on a debtor’s accounts did not violate the automatic stay provision because such conduct did not constitute a final settlement of the accounts. Similarly, service of the predicate notice herein merely sought to preserve the landlord’s right to assert a claim in the future against the tenant’s future leasehold interest subject to the tenant’s defenses and did not represent a permanent termination of the tenant’s contingent future lease interest.
Third, the underlying statutory scheme for the rent stabilization laws compels a determination that the automatic stay provision does not apply to such a pre-petition notice. Unlike the termination of a commercial lease, sounding in State contract law, the entire rent-stabilization scheme emanates from State and local governmental exercise of its police power. (In re Berry Estates, 812 F2d 67 [2d Cir], cert denied 484 US 819 [1987]; McKinney’s Uncons Laws of NY § 8622 [Emergency Tenant Protection Act of 1974 § 2 (L 1974, ch 576, § 4, as amended)]; see also, Matter of New York Univ. v McGoldrick, 205 Misc 790, 796 [Sup Ct, NY County 1954].) The Federal Government and courts may not interfere with the State’s exercise or administration of its police power except to the extent that such exercise impinges upon rights established by Federal law. (Kelly v Robinson, 479 US 36 [1986].) When the State exercises its police power qua police power, such as seeking to stop criminal conduct (Janis v Janis, 179 Misc 2d 199, 204, supra; 11 USC § 362 [b] [4]), or enforcing rent regulation (In re Berry Estates, supra), the automatic stay provision does not apply. When the State attempts to collect a debt, however, the stay provision does apply as the State is acting more in its proprietary capacity and is directly affecting the estate of the debtor. (1 Collier, op. cit., § 362.05 [4] [a], at 362-36, 362-37, n 25, citing National Labor Relations Bd. v Continental Hagen Corp., 932 F2d 828 [9th Cir 1991] [NLRB may enter backpay order but may not enforce payment against debtor].)
*120 In the instant case, it is an individual landlord, not the State, who is acting. Nonetheless, the conduct relates to the State and local government’s administration of the exercise of its police power. The State has a vested interest in regulating the manner by which a landlord can take a rent-stabilized apartment for his personal use and has established certain protections for tenants in this regard. Any determination of whether or not the automatic stay of the bankruptcy law applies to service of this State-required predicate notice must be viewed in light of this statutory background. Against the backdrop of a housing emergency, the Legislature enacted and amended on various occasions the rent stabilization laws. (In re Berry Estates, supra.) Among these laws was the right of a tenant occupying a rent-stabilized apartment to renew a lease subject to the prerogative of the landlord to decline to renew the lease based upon a good-faith need to occupy the apartment for himself or a member of his immediate family for residential living purposes in the City of New York. As part of the State’s administration of these rent laws enacted pursuant to its police power, the Rent Stabilization Code requires a landlord to afford a tenant several months’ advance notification of an intent not to renew a lease so that the tenant, if he elects, can seek alternative housing accommodations. The purpose and impact of the requirement of advance notice of an intent not to renew the lease do not relate to the administration of a debtor’s estate. There are no other creditors who can be harmed by permitting the landlord to serve this required predicate notice. For similar reasons, in Berry (supra), the United States Court of Appeals held that New York State had the right to proceed with actions to recover from a landlord unlawfully collected security deposits despite the landlord’s filing of a chapter 11 bankruptcy petition. The Circuit Court held that the automatic stay did not apply to the State’s attempt to obtain these illegal collections, as a determination in bankruptcy that the landlord was entitled to keep these funds “would fly in the face of New York State’s regulatory powers and the deference pledged to them by the bankruptcy laws.” (Supra, at 71.) The key in the instant case is that service of the notice is pursuant to the local government’s attempt to effectuate public policy, not to resolve a private economic-related dispute between landlord and tenant. (See, Janis v Janis, supra, at 204.) The constitutional prohibition against unwarranted intrusion by Federal law upon administration of the State’s police power, together with the absence of a significant relationship between the *121 requirement of this predicate notice and the administration of the estate of a residential debtor, mandate a holding that the automatic stay provision does not apply to service of the predicate notice.
Fourth, constitutional notions of due process require a determination that the automatic stay provision does not apply. The bankruptcy statute does not mandate that every action that affects or purports to terminate a property interest of the debtor during the pendency of the bankruptcy proceeding be voided as a violation of the automatic stay. Courts have voided particular conduct affecting a property interest in a constitutional manner when necessary to promote the paramount interests of the bankruptcy laws. As discussed above, the interests of the bankruptcy laws would not be served by treating as void the predicate notice. In the instant case, the debtor’s estate was not affected by service of the predicate notice. To hold otherwise would violate petitioner’s right to due process of law.
Petitioner received no notice of the filing or pendency of the bankruptcy proceeding and therefore had no meaningful opportunity to be heard or to seek vacatur of the automatic stay in a timely manner. In this case, application of the automatic stay in a manner that would void the predicate notice would mean that petitioner automatically forfeited its cause of action for a final judgment of possession of the subject apartment for petitioner’s own use or for that of his immediate family following expiration of respondent’s lease on July 31, 1999, without a meaningful opportunity to be heard. Interpretation of the bankruptcy laws in this manner would violate petitioner’s right to due process of law. (Sniadach v Family Fin. Corp., 395 US 337 [1969].) In Lassiter v Department of Social Servs. (452 US 18 [1981]), Justice Potter Stewart explained that procedural due process represented “fundamental fairness” and that this could not always be precisely defined. (Supra, at 24.)
In Fidelity Mtge. Investors v Camelia Bldrs. (550 F2d 47 [2d Cir 1976], cert denied 429 US 1093 [1977], supra), the Circuit Court of Appeals rejected a Sniadach-based due process claim founded upon application of the automatic stay provision. (Supra, at 55.) In Fidelity Mtge. Investors, the creditor received procedural due process based upon its immediate opportunity to be heard to vacate or modify the stay following its imposition. (Supra.)
In the instant case, the parties agree that petitioner was not a person who was required to be informed of the pendency of the bankruptcy petition and petitioner in fact received no no *122 tice of the existence of the bankruptcy proceeding prior to this motion to dismiss the holdover petition. Forfeiture of this cause of action without a fair opportunity to be heard or, alternatively, requiring petitioner to seek to reopen a discharged bankruptcy proceeding in the hope that the bankruptcy court would issue a rare order retroactively nullifying the stay[1] as it ap *123 plied to service of the predicate notice, an uncertain, expensive and time-consuming endeavor, would violate notions of fundamental fairness. Courts must interpret statutes, where possible, in a constitutional manner. (Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340, 346 [1982].)
Application of the automatic stay has meant that Statutes of Limitations for causes of action have expired. That is why Congress enacted section 108 (c) of the Bankruptcy Code. This section provides:
“Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
“(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
“(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.” (11 USC § 108 [c].)
If the 120- to 150-day window period truly represented a period of limitations, the period of limitations would not be tolled during the pendency of the bankruptcy proceeding, but would instead be extended for 30 days following notice of the termination of the bankruptcy proceeding, preserving the landlord’s cause of action. Section 108 does not apply to the instant proceeding, however. The window period is not in the nature of a period of limitations during which one may commence a proceeding; rather, service of the notice of nonrenewal during the 120- to 150-day period is a condition precedent to petitioner commencing the owner-occupancy proceeding. The rent stabilization laws and Code created petitioner’s cause of action to recover the subject premises for his own use. The Rent *124 Stabilization Code conditioned the cause of action upon timely service of the predicate 120- to 150-day notice. Where the statute creates the cause of action and conditions the right of action to a stated timetable, as here, compliance with the 120- to 150-day timetable becomes a substantive element of the cause of action. (Romano v Romano, 19 NY2d 444, 447 [1967]; Singer v Eli Lilly & Co., 153 AD2d 210, 214 [1st Dept 1990].)[2] If petitioner did not comply with the 120- to 150-day advance notice requirement or if the notice is deemed vitiated as a result of the stay, there is nothing remaining on which to predicate the cause of action for owner-occupancy. (Singer v Eli Lilly & Co., supra, at 214, citing Cimo v State of New York, 306 NY 143, 150; Romano v Romano, supra.)
Moreover, a 30-day extension of the 120- to 150-day period prior to expiration of the lease would be by definition nonsensical, as that period can never be recreated and the notice of the termination of the bankruptcy proceeding was first given well after the lease in question expired. Thus, there never could have been a second advance notice served upon respondent of an intention not to renew the lease when it expired. If the initial predicate notice is void, the instant holdover petition must be dismissed. Once dismissed, petitioner would be bound to offer respondent his choice of a one- or two-year renewal lease.
Thus, application of the automatic stay provision would effectively eviscerate petitioner’s cause of action to recover the subject premises for personal use. Such an absolute deprivation of petitioner’s property interest without a meaningful opportunity to be heard would violate the concept of fundamental fairness (Lassiter v Department of Social Servs., 452 US 18, 27, supra), while at the same time failing to advance any cognizable interest of the bankruptcy laws.
It is within the exclusive province of the Bankruptcy Court to determine whether or not to grant relief from the stay and to utilize the appropriate form of relief, including annulment of the stay. (28 USC § 157 [b] [2] [G]; B.N. Realty Assocs. v Lichtenstein, 238 Bankr 249, 252 [SD NY 1999], supra.) It is for this court in the first instance, however, to determine whether or *125 not the stay applies. (Hilsen v Hilsen, 161 AD2d 459 [1st Dept 1990]; Janis v Janis, 179 Misc 2d 199, 202, supra, citing In re Baldwin-United, Corp. Litig., 765 F2d 343, 347 [2d Cir 1985].) As explained above, there is no actual conflict between the Federal bankruptcy laws and State law requiring advance notice of an intent not to renew a lease sometime in the future. (In re Morton v National Bank, 866 F2d 561, 563, supra.) Assuming arguendo that respondent’s filing was in good faith, a party should not receive a windfall merely by the circumstance of having applied for the protection of the bankruptcy laws. (Butner v United States, 440 US 48, 55, supra, citing Lewis v Manufacturers Natl. Bank, 364 US 603, 609 [1961].) For all the reasons stated, this court holds that the automatic stay did not apply to service of the predicate notice. Accordingly, respondent’s motion to dismiss is denied.

. It appears to the court that there are at least two ways in which the automatic stay provision of the bankruptcy laws might constitutionally be applied in the instant case. Initially, it appears to this court that if, as respondent contends, the contingent right to a renewal lease forms part of the respondent’s estate in bankruptcy, petitioner was necessarily a party to whom notice of the filing of the bankruptcy petition had to be given, so that petitioner could appear and advance his interests in the proceeding at a meaningful time and in a meaningful manner. In the bankruptcy proceeding, petitioner could properly have sought to have the automatic stay vacated, as frequently happens when a tenant files a bankruptcy petition at a time when the landlord seeks to take action against a tenant’s leasehold interest. (See, 28 USC § 157.) In this case, the Bankruptcy Court could have vacated the stay in time to permit timely service of the Golub notice. Only the Bankruptcy Court has the power to vacate or to annul the automatic stay. However, the debtor’s time to serve notice to a creditor in a bankruptcy proceeding extended past the window period in any case. Thus, any tenant confronted with a potential owner’s use or nonprimary residence 120- to 150-day predicate notice, and who owed no rent to the landlord, could effectively guarantee a two-year renewal lease by filing a bankruptcy petition just prior to the 120- to 150-day window period. By filing one day prior to the window period in this case based primarily upon hundreds of thousands of dollars owed in back taxes since the early to mid-1980’s, one may reasonably surmise that this was respondent’s precise intention. Only the Bankruptcy Court, however, may determine whether or not respondent’s filing was in good faith. Although petitioner could at this late date seek to reopen the bankruptcy proceeding, any vacatur of the automatic stay would be futile at this time as any notice of intent not to renew the lease would be untimely and impermissible at this late juncture. If the initial predicate notice is void, the instant holdover petition must be dismissed. Once dismissed, petitioner would be bound to offer respondent his choice of a one- or two-year renewal lease. Second, the Bankruptcy Court has available to it another remedy in a situation such as that presented here. Rather than vacating the automatic stay, Bankruptcy Courts, enjoying exclusive jurisdiction over bankruptcy matters (United States Fid. & Guar. Co. v Bray, 225 US 205, 217 [1912]), have in appropriate circumstances annulled the automatic stay. When there is an annulment of the stay, the result is that the stay was never in effect. Section 362 (d) of the Bankruptcy Code sets forth grounds for relief from the automatic stay by terminating, annulling, modifying or conditioning the stay for cause. The Second Circuit has set forth a dozen factors for a Bankruptcy Court to consider in granting relief from the stay. (In re Sonnax Indus. v Tri Component Prods. Corp., 907 F2d 1280, 1286, supra.) Which form of relief is granted depends upon the particular circumstances of the case. (1 Collier, op. cit., § 362.07 [1], at 362-49.) Use of the annulment provision of this section would permit retroactive relief from the stay. It “would validate actions taken by a party at a time when it was unaware of the stay.” (Id., at *123 362-49 — 362-50.) “In any event, it seems clear that a [bankruptcy] court has the power to validate actions taken in violation of the stay, either by viewing them as merely voidable or by annulling the stay retroactively.” (Id,., at 362-50.) Any party, including petitioner herein, affected by the stay is entitled to move for relief before the Bankruptcy Court. (Id., § 362.07 [2], at 362-50.) As set forth above, however, this court holds that the automatic stay provision does not apply to service of the predicate notice.

. “If, on the other hand, the cause of action was cognizable at common law or is made such by virtue of another or different statute, then a validly enacted time limitation will generally be regarded as a mere Statute of Limitations, which may, if pleaded, preclude enforcement of the remedy, but does not extinguish the right” (Kahn v Trans World Airlines, 82 AD2d 696, 699 [2d Dept 1981]).