OPINION OF THE COURT
Vito M. DeStefano, J.
*757 In this action for divorce and ancillary relief, the plaintiff husband moves, pursuant to CPLR 3212, for summary judgment granting him a conversion divorce. The defendant wife opposes the motion on the basis that a judgment of divorce cannot enter because their separation agreement does not comport with Domestic Relations Law § 177.
The court notes that two interim decisions were issued on this motion which required actions to be taken by the parties resulting in the delayed issuance of this order.
For the reasons that follow, the motion is granted.
Background
The parties were married on April 13, 1999. On September 23, 2006, they executed a separation agreement which was filed in the office of the Nassau County Clerk on October 5th of the same year. It is undisputed that the agreement was properly subscribed by the parties and acknowledged in the form required to record a deed. Moreover, it is also undisputed that the parties substantially complied with the terms of the separation agreement, living separate and apart pursuant to the agreement for more than one year prior to the commencement of the action.[1]
On September 25, 2007, the husband commenced the instant action by filing a summons and complaint. The complaint contains one cause of action seeking a divorce judgment based upon conversion of the separation agreement. The wife’s answer contains two affirmative defenses alleging that the separation agreement was unenforceable because it was unconscionable and void because it was induced by misrepresentations.
After the husband moved for summary judgment, the wife opposed the motion arguing only that the “Court does not have the authority to grant a conversion divorce unless a Domestic Relations Law [§ ] 177 addendum has been added to the separation agreement” and “[s]ince no such addendum has been executed . . . the plaintiffs motion [should] be denied” (affidavit of Paula Hoffman Brown at 2). The wife asserted that the statute took effect on October 30, 2007, and did not limit its application to agreements entered into after that date.
In reply, the husband argued that in executing the agreement the parties “waived any right to the other paying for their *758 health insurance” (affirmation of Herbert Rubenfeld ¶ 8). The husband additionally argued that Domestic Relations Law § 177 was not in effect at the time the separation agreement was executed, and to apply the statute to agreements entered into prior to its effective date would be unconstitutional.
Subsequent to the submission of the motion, the parties duly executed a statement which, as will be discussed, substantially complies with the mandates of section 177 and, consequently, renders the arguments recited above academic.
Decision and Order
Domestic Relations Law § 177 (“Prerequisites for divorce”) reads as follows:
“1. Prior to accepting and entering as a judgement any stipulated agreement between the parties in an action for divorce, the judge shall ensure that there is a provision in such agreement relating to the health care coverage of each individual. Such statement shall either (a) provide for the future coverage of the individual; or (b) state that the individual is aware that he or she will no longer be covered by his or her spouse’s health insurance plan and that the individual will be responsible for his or her own health insurance coverage. Every agreement accepted by the court must contain the following statement, signed by each party, to ensure that the provisions of this subdivision are adhered to:
“ ‘I, (spouse), fully understand that upon the entrance of this divorce agreement, I may no longer be allowed to receive health coverage under my former spouse’s health insurance plan. I may be entitled to purchase health insurance on my own through a COBRA option, if available, otherwise I may be required to secure my own health insurance.
“(Spouse’s signature) (Date)’
“2. Prior to rendering a decision in an action for divorce, the judge shall ensure that he or she notifies both parties that once the judgement is entered, a person may or may not be eligible to be covered under his or her spouse’s health insurance plan, depending on the terms of the plan. If, prior to ac *759 cepting an agreement and entering the judgement thereon, the judge determines that the provisions of this section have not been met, the judge shall require the parties to comply with the provisions of subdivision one of this section and may grant a thirty day continuance to afford the parties an opportunity to procure their own health insurance coverage.”
Section 177 was enacted August 1, 2007 and became effective 90 days after its enactment, October 29, 2007.
The statute cannot be described as a model of precision either grammatically, or in substance and structure.[2] For example, subdivision (1), which will be discussed in greater detail infra, concerns specific prerequisites for divorce judgments based upon “agreements” and does not apply to other types of matrimonial decrees,[3] or even to divorce judgments rendered after trial. “Sandwiched” in between other language applicable to judgments entered pursuant to agreements, the first sentence of subdivision (2) mandates the court to provide parties, apparently in both contested and uncontested divorce actions, with notice that entry of a divorce judgment may terminate coverage for a spouse covered under the other spouse’s health insurance plan. In this regard, the court notes that the imprecise phrase “[p]rior to rendering a decision” in an action for divorce should probably be interpreted to include all divorce actions, given that findings of fact and conclusions of law are required in all such cases.
The second sentence of subdivision (2) again refers to divorce judgments predicated on “agreements,” and requires the court to compel the parties thereto to comply with subdivision (1). Subdivision (1) contains the following anomalous language: “Prior to accepting and entering as a judgement any stipulated *760 agreement.” As suggested in the accompanying practice commentaries, such a statement is devoid of meaning. Subdivision (1) (b) goes on to state that agreements must contain provisions indicating that the “individual is aware that he or she will no longer be covered” (emphasis added) under a spouse’s health insurance plan and that “the individual will be responsible for his or her own health insurance coverage.” It then requires that every agreement “accepted” by the court contain a statement in a prescribed form, reciting that the parties “fully understand that upon entrance of this divorce agreement” they “may no longer be allowed to receive health coverage under [his or her] former spouse’s health insurance plan.”
The court notes that the phrase “upon the entrance of this divorce agreement” is yet another incomprehensible statement, which could arguably refer to entry into an agreement, or to entry of a divorce judgment based upon an agreement. Compounding the confusion, parties are compelled to recite, as if upon allocution, that they “fully understand” it.
Under applicable rules of statutory construction, any construction that would lead to absurd results or otherwise make the statute absurd is to be avoided (McKinney’s Cons Laws of NY, Book 1, Statutes § 145). Statutes are to be given a reasonable construction, it being presumed that the Legislature intended a reasonable result (McKinney’s Cons Laws of NY, Book 1, Statutes § 143). Of course, the primary consideration of the courts in the construction of any statute is to ascertain and give effect to the intention of the Legislature (McKinney’s Cons Laws of NY, Book 1, Statutes § 92). Significantly, courts “are not bound to mechanical subservience to . . . ill-chosen legislative language” where a statute, even one clear on its face, makes no sense (see Matter of Caraballo v Community School Bd. Dist. 3, 49 NY2d 488 [1980]).
In enacting section 177, the Legislature indicated that its purpose was to “require parties in an action for divorce to be made aware of the potential loss of their health care coverage obtained through their spouse’s health insurance” (Assembly Mem in Support of L 2007, ch 412, 2007 McKinney’s Session Laws of NY, at 1919). The legislative memorandum goes on to state that
“[w]hether or not a party to a divorce action has health insurance coverage once a settlement is reached is of crucial importance, and explicit provisions addressing these facts should be included in *761 any rendered judgment. This legislation ensures that parties who receive health coverage under their spouse’s plan are made aware of their loss of health insurance coverage upon the issuance of a divorce.” (Id.)
Given that the statute cannot be literally applied without causing an absurd result, the court concludes that to satisfy the Legislature’s intent, it is sufficient, under the statute as presently written and after providing the notice required under subdivision (2), to require the parties to a separation or settlement agreement to recite the following:
“Assuming that I,_, am currently covered under my spouse’s health insurance plan, I am aware that upon issuance of a judgment of divorce, I may no longer be allowed to receive health care coverage under my former spouse’s health insurance plan. Further, I may be entitled to purchase health insurance through a COBRA option, if available, otherwise I may be required to secure my own health insurance.”
At bar, after the court provided the requisite section 177 notice, and following submission of the summary judgment motion, the parties executed the above statement.
Accordingly, the husband’s motion for summary judgment is granted, the requirements of section 177 having been met. In light of delays caused by issues arising after submission of the motion, the court declines to grant any continuance to the wife.

. Although the wife’s answer denies knowledge or information sufficient to form a belief as to whether the parties lived separate and apart pursuant to the agreement, no such allegation is contained in her opposition papers.

. As stated by Justice Scheinkman in the Supplementary Practice Commentaries, “[w]hile the statute has a laudable purpose, its language and enforcement mechanisms are problematic” (McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 177, 2008 Pocket Part, at 116). In fact, a revised version of section 177, intended to “replace section 177 of the Domestic Relations Law . . . for the purpose of facilitating its application and making it easier for both Bench and Bar to meet its requirements” (Senate Introducer Mem in Support of 2008 NY Senate Bill S6899), is presently under consideration in the State Senate and Assembly.

. Noticeably absent from the statute is any reference to actions for annulment, the successful conclusion of which would likely result in termination of health coverage for one of the parties if previously covered under the other’s health insurance plan.